Omer YOUNG, Jr., Plaintiff,

v.

Norman J. HUNT and Harold G. Roddy, Defendants.

No. S80–359.

United States District Court, N. D. Indiana, South Bend Division.

Feb. 10, 1981.

Omer Young, Jr., pro se.

Kermit R. Hilles, Indiana Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Plaintiff, Omer Young, Jr., was a prisoner confined at the Indiana State Prison in Michigan City, Indiana at the time he filed this complaint. He was subsequently transferred to the Westville Correctional Center and has been released on parole. This action is brought pursuant to 42 U.S.C. § 1983 naming Norman J. Hunt, Director of Classi-fication and Treatment of the Indiana Department of Corrections, and Harold Roddy, Director of the Division of Work Release, as defendants and seeks both damages and injunctive relief. Plaintiff alleges that his Fifth and Fourteenth Amendment rights were violated when these defendants denied his work release application. Specifically, plaintiff alleges that his due process rights were violated because the defendants may have used false information in making their determination, that they failed to follow their own regulations in the processing of his work release application, and that the decision to deny him work release was arbitrary and capricious. Plaintiff also alleges that his right to equal protection of the law was violated because other inmates with offenses of an assaultive nature and repeated parole violations have been and are now in the work release program.

The plaintiff became eligible for work release consideration in early 1979 and did apply for it. His application was disapproved on May 24, 1979 by Harold Roddy. The stated reasons for this denial were a history of repeated parole violations and the assaultive nature of plaintiff's offense. Plaintiff appealed this denial in conformity with the procedural regulations to defendant Hunt who affirmed the denial on November 26, 1979.

Plaintiff subsequently filed this action in the United States District Court for the Southern District of Indiana on or about December 12, 1979. The Honorable William E. Steckler transferred this cause pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the Northern District of Indiana, South Bend Division, within whose venue the Indiana State Prison at Michigan City, Indiana lies. The statute governing work release at the time this action was filed was Indiana Code (hereinafter I.C.) 11–7–9–1 et seq., particularly I.C. 11–7–9–2. The administrative regulations promulgated pursuant to this statute and I.C. 11–1–1.1–10 are found at 210 Indiana Administrative Code (hereinafter I.A.C.) 1–2–2. These regulations are further disseminated through the Department of Corrections Manual 15–

04, Policies and Procedures for Work Release and the Inmate Handbook. These documents have all been incorporated into this record and have been thoroughly reviewed in light of these allegations. Finally, it must be noted that the statutory authorization for the work release program has been modified pursuant to I.C. 11–7–9–4, effective October 1, 1980. However, the statute in effect at the time of the challenged conduct is the one which must be examined. The new statute would have no effect on the outcome of this case, particularly in light of I.C. 11–8–2–10 which continues in effect the previously existing regulations. The new statute, I.C. 11–7–9–4 will be found in the appendix of this opinion.

The plaintiff's central argument is that the State of Indiana by I.C. 11–7–9–1 et seq. and by promulgating regulations for its administration created on behalf of eligible inmates a protectible "liberty" interest in work release participation. Therefore, plaintiff alleges that the procedural processing of any work release application should be accompanied by some degree of the due process protections enunciated in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The threshold question then becomes whether the denial of work release status infringed a liberty interest protected by the Due Process Clause. Following the decision in *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), this Circuit has held that a prisoner is not constitutionally entitled to procedural protections unless "... he has some justifiable expectation rooted in state law that the challenged action will not be taken absent the occurrence of a specified factual predicate." *Arsberry v. Sielaff,* 586 F.2d 37, 45 (7th Cir. 1978); *Stringer v. Rowe,* 616 F.2d 993, 996 (7th Cir. 1980). In *Meachum, supra,* 427 U.S. at 229, 96 S.Ct. at 2540, the Supreme Court of the United States held that a state could create a liberty interest "by statute, by rule, or regulation." This Circuit has recognized that a prisoner may have a due process

right as a result of entitlements created by prison regulations and by official policies and practices. *Stringer, supra,* at 996; *Arsbury, supra,* at 47; *Durso v. Rowe,* 579 F.2d 1365 (7th Cir. 1978). Plaintiff argues that by virtue of the statutes and regulations at issue, there was created a justifiable expectation that he would be granted work release when he became eligible. Therefore, plaintiff argues he is entitled to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that those state-created rights are not arbitrarily abrogated. *Wolff v. McDonnell, supra,* 418 U.S. at 557, 94 S.Ct. at 2975.

The Seventh Circuit Court of Appeals has explicitly recognized the similar issues involved in the revocation of work release status and the revocation of parole. *Durso, supra.* The core values of unqualified liberty not enjoyed by those inmates continually incarcerated are identical. Likewise, the similarity between the discretionary grant of work release and the discretionary grant of parole has been recognized. *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir. en banc 1980), *cert. den. Anderson v. Winsett,* —— U.S. ——, 101 S.Ct. 891, 66 L.Ed.2d 822 (White, J. and Rehnquist, J. dissent as to denial); *Wagner v. Gilligan,* 609 F.2d 866 (6th Cir. 1979); *Boothe v. Hammock,* 605 F.2d 661 (2d Cir. 1979); *Shirley v. Chestnut,* 603 F.2d 805 (10th Cir. 1979). The question of whether the Indiana work release statute creates a legitimate claim of entitlement rising to a "liberty" interest requiring due process protections has not been previously decided.

Guidance in the area of what inmate interests rise to the level of a "liberty" protected by the Due Process Clause is found in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Greenholtz* the Supreme Court of the United States determined when and to what extent the Due Process Clause applied to discretionary parole release decisions. The fundamental point made by the five mem-

ber majority in *Greenholtz* was that the possibility of parole release is not an interest entitled to due process protection. It was this fundamental choice and its rationale with which four members of the court emphatically dissented. *Greenholtz, supra,* (Powell, J. concurring in part, dissenting in part) (Marshall, J. with whom Brennan and Stevens, JJ., join dissenting in part). This split developed over the dichotomy between being deprived of a liberty one has (i. e. an inmate out on parole) and, being denied a conditional liberty that one desires (i. e. an inmate seeking parole or work release). *Greenholtz, supra,* at 2105. The crucial distinction is between revoking a liberty one has and the decision to grant or deny a conditional liberty one desires. *Greenholtz, supra,* at 99 S.Ct. 2104–2105. The court in *Greenholtz* acknowledged that although there was no constitutionally cognizable liberty interest in access to a discretionary parole system, "the expectancy of release provided for in [the Nebraska parole] statute" may be entitled to some measure of constitutional protection. 442 U.S. at 12, 99 S.Ct. at 2106. The court cautioned, however, that the existence of a statutorily created liberty interest depends on the statutory language and "must be decided on a case by case basis." *Id.*

In *Greenholtz,* the Nebraska statute at issue provided in pertinent part:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of his parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for the law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb.Rev.Stat. § 83–1, 114(1).

The Supreme Court held that the "shall . . . release/unless" language of the statute and its structure created a presumption that obligated the Nebraska Parole Board to grant parole unless one of the four statutory reasons were present.

The wording and structure of the Indiana work release statute is significantly different. The Indiana statute at issue provides in pertinent part:

"The department of correction is authorized and directed to establish a work release plan under which an eligible prisoner *may* be released from actual custody . . . Rules and regulations for the administration of the work release plan shall be established in the same manner as other rules and regulations for the government of the state prison system." I.C. 11–7–9–4 (emphasis added)

The regulations promulgated pursuant to this authorization are found at 210 I.A.C. 1–2–2, specifically subparagraph (3) which provides:

". . . Consideration will be given such factors as the nature of the inmates sentence, his *mental* willingness, and physical ability to work, his maximum time due to be served, *and any additional factors which, in the judgment of the Work Release Representative, would have a significant bearing on the likelihood of a successful completion of the Work Release Program.*" (emphasis added)

Further guiding criteria are found in the Department of Corrections Manual 15–04, *Policies and Procedures for Work Release.* Part II of this manual enumerates specific criteria for consideration in the release determination, specifically, in part:

"C.(1)(c) Absconding from prosecution, probation, or parole supervision or military A.W.O.L. *may* bar a candidate from work release participation.

C.(1)(d) Applicants serving sentences for crimes against persons *may* be considered for work release participation. Each application will be reviewed on its individu-

al merits and liabilities with consideration given to the facts of the offenses and the frequency of this type of behavior." Manual 15–04 (emphasis added)

Other criteria, to list a few, include a current psychological or psychiatric report, any institutional misconduct, a record of escape or attempted escape, and an active warrant or detainer. There is no contention that the plaintiff failed to meet any of the general rules of eligibility, rather the controversy centers around the procedures and reasons used in the denial of his application.

██ This statute and regulations do not contain the imperative language in *Greenholtz* which created a presumption of parole and a "liberty" entitled to constitutional protection. The use of the permissive "may" in the statute and throughout the specific criteria for selection makes the decision to grant or deny work release entirely discretionary. This statute is more akin to that at issue in *Meachum v. Fano, supra*, where the discretion to transfer a prisoner under state law was absolute, than it is to the "shall ... release/unless" language found to create a liberty interest in *Greenholtz*. This statute and regulations envision a work release determination which is subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals. The decision turns on a "discretionary assessment of a multiplicity of imponderables entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and Expert-Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 813 (1961); *Greenholtz, supra*, at 2105. The work release decision is no more than an informed prediction as to what would best serve correctional purposes and the safety and welfare of the community.

In light of these considerations, the Indiana work release scheme does not create a protectible entitlement. That the state hold out the possibility of work release provides no more than a mere hope that it will be obtained. See *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33

L.Ed.2d 548 (1972). Therefore, the plaintiff is not entitled to the panoply of protections afforded by the Due Process Clause of the Fifth and Fourteenth Amendments. Lastly, the procedures used and the reasons for the denial followed the stated regulations precisely.

██ Plaintiff also alleges an equal protection violation in that other offenders with more offensive and assaultive backgrounds than his are now and have in the past been admitted into the work release program. However, prison officials must be accorded latitude in the administration of prison affairs. *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). A mere inconsistency in prison management may not in itself constitute a cognizable equal protection claim. *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). The prison administration articulated specific reasons for the denial of the work release application which were within the enunciated parameters of the statute and regulations. Equal protection requires only that a classification which results in unequal treatment bear some rationale relationship to a legitimate state purpose. *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976). Here the application was denied due to the assaultive nature of the offense and prior repeated parole violations which reasons are borne out by the record in this case. In light of this plaintiff's historical record of parole violation it cannot be said that this decision was made in an arbitrary, capricious or discriminating manner. Thus, no cognizable equal protection claim is stated.

Finally, since Young has been released on parole and is no longer confined in any Department of Correction institution this cause is moot as to injunctive relief. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effect." *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 678, 38 L.Ed.2d 674, 683 (1974); see also, *Mawhinney v. Henderson*, 542 F.2d 1 (2d Cir. 1976); *Gardner v. Luckey*, 500 F.2d 712 (5th Cir. 1974).

Therefore, the defendants' Motion for Summary Judgment is hereby GRANTED. CASE DISMISSED.

## APPENDIX

11–7–9–4 [13–143]. Establishment of work release plan—Rules and regulations—Violation of conditions [repealed effective October 1, 1980].—The department of correction may establish a work release plan under which a prisoner may be released from actual custody during the time necessary to proceed to the place of his employment, perform his work, and return to quarters designated by the department. If the prisoner violates any of the conditions prescribed by rules and regulations for the administration of the work release plan, then he may be withdrawn from work release privileges and may be transferred to the general prison population. Rules and regulations for the administration of the work release plan shall be established in the same manner as other rules and regulations of the department. [Acts 1967, ch. 261, § 4, p. 765; 1978, P.L. 2, § 1114, p. 2.]

210 IAC 1–2–2 Eligibility for program; application and approval for inclusion

Authority: IC 11–1–1.1–10

Affected: IC 11–7–9–2; IC 11–7–9–1

Sec. 2. Eligibility for Program.

(1) Any inmate of the State Prison System may be granted the privilege of working in the free community by the Commissioner of the Department of Correction provided:

(a) The inmate has been sentenced to five years or more imprisonment, and has served over one fourth of his sentence; or

(b) The inmate has been sentenced to five years or more imprisonment, and has not served one fourth of his time, but the sentencing judge recommends that he be granted the privilege of work release; or

(c) The inmate has been sentenced to less than five years, and the sentencing judge recommends that he be given the option of serving his sentence under the Work Release Program.

(2) Any inmate desiring to participate in work release must first submit a written application requesting consideration for inclusion in the program. Application forms will be provided by the State prison system through the Work Release Representative at the various institutions. If assistance is needed the Work Release Representative will provide it.

(3) All applications will be reviewed by the Work Release Representative at the particular institution. Consideration will be given such factors as the nature of the inmate's sentence, his mental willingness, and physical ability to work, his maximum time due to be served, and any additional factors which, in the judgment of the Work Release Representative, would have a significant bearing on the likelihood of a successful completion of the Work Release Program.

(4) The Work Release Representative will thereafter submit his evaluations and recommendations in writing to the Warden or Superintendent of the institution for approval.

(5) All approved applications shall be forwarded to the Work Release Director who will:

(a) review the application; and

(b) notify the sentencing judge of the possibility that the inmate may be assigned to the Work Release Program; and request the judge's recommendation;

(c) notify the Parole Division that a field investigation of the inmate's family, background, and financial obligations is required.

(6) Upon completion of his review the Work Release Director will forward his findings and recommendations to the Commissioner of the Department of Correction who may grant final approval or disapproval for placement in the Work Release Program. (*Indiana Department of Correction; Work Release Program Rule I; filed Jul 8, 1968, 2:45 pm: Rules and Regs. 1969, p. 24*)

STATE OF INDIANA DEPARTMENT
OF CORRECTION

APPLICATION AND SELECTION PRO-
CEDURE FOR WORK RELEASE

Pursuant to Policy Number 15–04

The purpose of this directive is to establish a procedure for the selection of inmates for participation in the Work Release Program.

As such, the following rules for eligibility shall be applied, realizing that well defined selection criteria are imperative to a successful Work Release Program.

I. *General Rules of Eligibility for Application*

A. The inmate shall be eighteen (18) years of age or older.

B. Applicants must be between a maximum period of eight (8) months and a minimum period of four (4) months of an eligible release date.

The four (4) months minimum requirement may be waived in accordance with space availability.

C. All Work Release applicants must be in Credit Time Class I when applying and when transferred to a Center.

D. All Work Release applicants must have a minimum security classification for final approval.

E. Applicants serving life sentences must have been granted Clemency and be within eight (8) months of an eligible release date.

F. Inmates having been approved for parole and who have placement problems can qualify for Work Release participation upon the request of the Parole Division.

G. Applicants may be required to have confirmed employment leads during times of high unemployment.

H. Participation in an institutional program does not in itself automatically disqualify an applicant from Work Release participation.

I. Applicants who have been disapproved for Work Release and have been "set" by the Parole Board can reapply when they are again within eight (8) months of an eligible release date.

J. An applicant should be sentenced to a minimum of 360 days; however, those persons with sentences of less than 360 days may be considered in accordance with space availability.

K. Approved applicants will not be transferred to Work/Study Release Centers within a sixty (60) period of their regularly scheduled Parole Board appearance or release date.

II. *Specific Criteria for Selection*

A. Emotional and Behavioral Factors

1. The Division of Work Release may request a current psychological or psychiatric report on an applicant with a history of emotional instability.

2. Institutional misconduct shall be considered and may be sufficient cause for denial or removal from the program.

3. Applicants receiving Conduct Adjustment Board convictions prior to Central Office approval and/or transfer must again be reviewed and approved by the Institution Classification Committee.

B. Physical Conditions

1. Applicants must be in such a state of health that they are physically able to perform the proposed job task.

C. Type of Crime

1. The applicants' records will be reviewed for frequency of arrests and convictions and types of offenses.

a. Those persons having a history of the sale, use or possession of controlled substances may be considered for participation on Work Release at the discretion of the Department of Correction, taking into consideration such things as the type of controlled substance, the degree of contact which the subject has had with the controlled substance, and the psychological and/or physiological dependency upon the controlled substance.

b. A record of escape or attempted escape from correctional institutions (including jails) within the four (4) years immediately preceding the time of Work Release consideration will bar a candidate from Work Release participation.

c. Absconding from prosecution, probation or parole supervision or military A.W.O.L. may bar a candidate from Work Release participation.

d. Applicants serving sentences for crimes against persons may be considered for Work Release participation. Each application will be reviewed on its individual merits and liabilities with consideration given to the facts of the offenses and to the frequency of this type of behavior.

e. Crimes that achieve such notoriety in the general community that public opinion would be adverse to the granting of the Work Release privilege may bar a candidate from favorable consideration.

f. An active warrant, detainer, or sentence held in abeyance will bar an applicant from Work Release.

III. *Implementation of Selection Procedure*

A. General Requirements

1. Each applicant for participation in the Work Release Program shall have completed two orientations. The first Work Release orientation will occur during intake processing and the second just prior to the time the inmate becomes eligible for the program.

2. All institutions and facilities are to develop and implement appropriate orientation programs under the joint supervision of the Director of Work Release and Classification and Treatment.

B. Action by the Applicant

1. The applicant shall contact the Institutional Work Release Director for enrollment in the orientation program.

2. When the applicant has satisfied all the criteria for entrance into the Work Release Program, he/she may secure an application from the Institutional Counselor or the Institutional Work Release Director.

3. The applicant shall submit the completed application to the Institutional Work Release Director. The application should be dated and should list the reasons why the inmate is requesting participation in the Work Release Program.

C. Action by the Institutional Work Release Director

1. Conduct periodic Work Release orientation classes to identify and recruit eligible applicants.

2. Provide application forms to inmate population.

3. Interview and screen applicants. Review and evaluate the application making a recommendation for approval or denial with written rationale. If denied, tell the applicant why he/she has been denied and explain appeal procedures.

4. Process approved applicants through the Classification Committee. Coordinate the submission of approved applications to the Warden or Superintendent for their recommendation.

5. Forward all approved applications and supporting documents and recommendations to the Director of Work Release in the Central Office.

6. Forward all requested appeals with supporting documents to the Director of Work Release when appropriate, per appeal procedure as outlined in III, G. 3.

D. Action by the Institutional Classification Committee

1. Receive the documents from the Institutional Work Release Director.

2. Review the application and supporting documents which may include evaluations and recommendations by the Unit Management Team.

3. Interview the applicant.

4. Determine the:

a. current Credit Time Class;

b. expected discharge date;

c. Parole Board date (if any).

5. Evaluate the application and notify applicant whether he/she is approved for Work Release. Explain reasons for disapproval to applicant and discuss the appeal procedure with him/her.

6. The Classification Committee, when approving an applicant for minimum security classification, shall notify the trial court and the prosecuting attorney of the impending change in security classification as per I.C. 35–4.1–5–3 when so required.

7. Submit application, supporting documents and recommendations on approved applicants to the Institutional Head and notify the Institutional Work Release Director of this action.

E. Action by Institution Head (or his designee)

1. Receive the documents from the Institutional Classification Committee.

2. Review all pertinent materials.

3. Evaluate the application and record the reasons for either approving or disapproving the applicant.

4. Submit the approved application, supporting documents and recommendation to the Department of Correction Director of Work Release, via the Institutional Work Release Director.

5. Have the applicant notified that the application has been approved or disapproved. Have reasons for disapproval and appeal procedures explained to the applicant.

F. Action by Department of Correction Director of Work Release

1. Receive the documents from the Institutional Head via the Institutional Work Release Director.

2. Evaluate the application and make a final determination of approval or denial. Record the reasons for either approving or disapproving the application.

3. Prepare a Transfer Authority for the approved applicant and submit it to the Department of Correction Director of Classification and Treatment for signature.

4. Notify the Institutional Work Release Director of action at the Central Office level and have him explain the appeal procedures to those applicants that were disapproved.

5. Coordinate the transfer of the approved applicant, his/her institutional packet and medical record to the destination indicated on the Transfer Authority.

G. Appeal Procedures for Applicants Disapproved by Screening Staff

1. The actions of the Institutional Work Release Director in either denying the prospective applicant an application form or disapproving the application after reviewing it may be appealed directly to the Institutional Head. This appeal must be filed within ten (10) working days of the notification of such action.

2. The applicant may appeal the decision of the Classification Committee directly to the Institutional Head within ten (10) working days of receipt of written notice of that committee's action to deny approval of the Work Release application.

3. The applicant may appeal the decision of the Institutional Head to the Department of Correction Director of Work Release within ten (10) working days of receipt of written notice of the Institutional Head's action to deny approval of the Work Release application.

4. The applicant may appeal the decision of the Department of Correction Director of Work Release to the Director of Classification and Treatment, as the Commissioner's designee, within ten (10) working days of receipt of notice of the Department of Correction Work Release Director's action to deny approval of the Work Release application.

5. The decision of the Director of Classification and Treatment, as the Commissioner's designee, is the final appeal within the Department of Correction.

NOTE: THOSE INSTITUTIONAL HEADS AND FACILITY DIRECTORS NOT HAVING AN INSTITUTIONAL WORK RELEASE DIRECTOR OR A CLASSIFICATION COMMITTEE WILL APPOINT A COUNSELOR TO PERFORM THE SPECIAL FUNCTIONS SPECIFIED ABOVE UNDER III C AND III D.