**Tomas G. ERVIN, Appellant,**

v.

**David BLACKWELL and Donald R. Jenkins, Appellees.**

**No. 83–2072.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1983.

Decided May 3, 1984.

Harvey M. Tettlebaum, Jefferson City, Mo., Kenneth M. Romines, Curtis & Crossen, Clayton, Mo., for appellant.

John Ashcroft, Atty. Gen., Jerry Short, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Tomas G. Ervin appeals from the district court's[1] denial of his claim to recover $7,876.63 deducted from his earnings for maintenance costs by the Missouri Division of Corrections while he was enrolled in its

**1.** The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

Institutional Work Release Program. He argues that the deduction deprived him of his property without due process of law. We affirm the judgment of the district court.

Ervin was an inmate subject to the custody and control of the Missouri Division of Corrections between February 14, 1969, and August 16, 1979. From December 21, 1976, until the date of his release, he participated in the Division's work release program and was employed as a computer operator by the Missouri Department of Revenue. Upon entering the program, no maintenance costs were deducted from Ervin's salary. After he had been enrolled for approximately five months, he claims that prison authorities threatened and coerced him into signing an agreement to permit the deductions.

At the time Ervin enrolled in the work release program, maintenance cost deductions were authorized by regulations adopted by the Missouri Division of Corrections. *See* 13 Mo.Admin.Code § 20.103.-010(3) (rescinded 1978).[2] The amount of the deduction was based on a sliding scale keyed to the prisoner's earnings. During the period of his employment, Ervin earned $33,857.58 and the state deducted $7,986.63 from this amount.

Following his parole, Ervin brought this action under 42 U.S.C. § 1983 (1976) to recover the amount of his maintenance costs. The district court entered summary judgment in favor of the appellees. In so ruling, the district court rejected Ervin's characterization of the issue as whether or not he possessed a protectable property interest in his salary. Rather, the court held the issue to be whether or not Ervin had a liberty interest in participating in the work release program:

> [t]he underlying right involved ... is not in a salary obtained if the plaintiff is granted work release, but in the work release program itself. The issue is whether plaintiff has a liberty interest in

the work release program and, if so, whether the defendants' actions deprived him of that interest or infringed upon it. Naturally, plaintiff has a property right in his salary, but in this case he exchanged a portion of his salary for the opportunity of participating in the work release program. The issue is whether the defendants can require such payment as a condition to work release.

The district court found only passing statutory reference, and no specific authorization, for the establishment of the work release program. It determined, however, that the general grant of authority provided to the Director of the Division of Corrections was sufficiently broad to permit the establishment of the program and to condition participation in it on the payment of maintenance costs. It further noted that the maintenance deductions were specifically authorized by the Division's regulations. Under these circumstances, the district court found that Ervin's rights had not been violated because he had no liberty interest entitling him to participate in the work release program. The district court further concluded that summary judgment was mandated by the qualified immunity doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Appellee Jenkins was Director of the Missouri Division of Corrections from February 1, 1978, until August 8, 1979. Appellee Blackwell held the same position from that date through appellant's parole on August 17, 1979.

■ Although our analysis leads us to the same conclusion, we cannot agree with the district court that the issue presented is whether Ervin possessed a liberty interest in the work release program. It is true that most section 1983 actions arising out of work release programs involve questions of whether the inmate has a constitutionally-protected liberty interest to participate in the program. *See, e.g., Matz v. Kelsch,* 638 F.2d 48 (8th Cir.1981); *Winsett v.*

---

2. These regulations were rescinded in 1978 and replaced by new regulations which provided that if the prisoner's gross monthly earnings

exceeded $150.00, 25% of the amount earned up to $300.00 was to be deducted. *See* 13 Mo.Admin.Code § 20–103.011(3) (1978).

*McGinnes,* 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981); *Jones v. Lane,* 568 F.Supp. 1113 (N.D.Ill.1983); *Young v. Hunt,* 507 F.Supp. 785 (N.D.Ind.1981). Such programs typically implicate a prisoner's liberty because they represent additional freedom not available under full-time incarceration. In this case, however, Ervin is not challenging a decision denying him entrance or continued participation in the program. He successfully completed the program and was paroled. What he is contesting are the conditions of the program as they affected his salary. The issue therefore is whether Ervin possessed a protectable property interest—"a legitimate claim of entitlement"—to the full amount of the salary he earned while enrolled in the program. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); *Peck v. Hoff,* 660 F.2d 371, 373 (8th Cir.1981). As the district court correctly noted, however, that salary did not exist in the abstract; Ervin received it only by virtue of his participation in the work release program. We therefore look to the state law creating the program to determine if Ervin possessed such a property interest. *Parratt v. Taylor,* 451 U.S. 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 L.Ed.2d 420 (1981) (citing *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).

■ At the time Ervin was enrolled, the work release program lacked specific statutory authorization. However, the district court held, and we agree, that the following general grant of authority to the Director of the Division of Corrections provided sufficient authority to establish the program:

> The director shall make such rules and regulations, not in conflict with the laws of this state, as he may deem proper for the government and management of the institutions under the jurisdiction of the division.

Mo.Rev.Stat. § 216.115(3) (1978) (repealed 1982).[3] Our conclusion that the Director was authorized to establish the program is supported by a reference to work release in a related statute.[4] Furthermore, the Division of Corrections cited section 216.115(3) as granting it the authority to promulgate the work release regulations.

The work release regulations specifically provided that the payment of maintenance costs was a mandatory condition to participation in the work release program:

> (C) Contractual Requirement: Prior to entering an institutional work release program, each inmate and his employer shall be required to sign a statement indicating the following: (A copy of the statement is attached to this policy as Appendix 4)
>
> 1. That the inmate's entrance into the work release program is voluntary;
>
> 2. That the inmate is willing to pay all or part of his maintenance costs if his income from working is sufficient, as determined by the slide scale attached to this policy as Appendix 5.
>
> 3. That the inmate and employer understand and will abide by the conditions applicable to this program as issued by

---

**3.** In 1982, Missouri adopted legislation explicitly authorizing the work release program. Mo.Rev. Stat. § 217.435 (1983). It specifically provided for the deduction of maintenance costs from the salaries of those participating in the program.

**4.** The director of the division of corrections may extend the limits of the place of confinement of an inmate who, he has reasonable cause to believe, will honor his trust, by authorizing him, under prescribed conditions, to visit specifically designated places within the state for a period not to exceed thirty days per year and to return to the same or another designated institution. The authority herein conferred may be exercised to permit the inmate to visit a relative who is ill, to attend the funeral of a relative, to obtain medical services not otherwise available, to contact prospective employers *and to participate in approved rehabilitation programs. If the inmate is enrolled in a work release program the thirty day per annum limitation shall not apply.* Mo.Rev.Stat. § 216.224 (1978) (repealed 1982) (emphasis added).

the Division of Corrections and the institution.

13 Mo.Admin.Code § 20–103.010(3) (rescinded 1978).

 These regulations clearly establish that Ervin can assert no legitimate claim of entitlement to the full amount of his salary. Missouri regulations specifically condition participation in the program on the payment of maintenance costs, and carrying out that condition is hardly an "arbitrary action of government" demanding of due process protection. *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Ervin can claim nothing more than "an abstract need or desire" for his full salary. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. There is simply "no interest . . . for process to protect." *Olim v. Wakinekona,* 461 U.S. 238, ——, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). It is true that Ervin did not sign a contract authorizing the deductions until after he had been in the program five months. Even if this delay violated the work release regulations, *see* 13 Mo.Admin. Code § 20–103.011(3)(C) (rescinded 1978), it would not be actionable under section 1983 without an accompanying deprivation of a federal right. *See Sigler v. Lowrie,* 404 F.2d 659 (8th Cir.1968), *cert denied,* 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969); *Ybarra v. Bastian,* 647 F.2d 891 (9th Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 309, 70 L.Ed.2d 153 (1981).

The authority cited by Ervin in support of his claim is unpersuasive. In *Sell v. Parratt,* 548 F.2d 753 (8th Cir.1977), *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 152 (1978), a prisoner had his "free world money" confiscated by prison authorities. We held that the prisoner had a protectable property interest in the money and that Nebraska law did not permit the "punitive forfeiture" of such funds. *Id.* at 758. In the present case, we are not dealing with "free world funds" confiscated in violation of Nebraska law. Ervin earned his money while in a prison rehabilitation program authorized under Missouri law which expressly required enrollees to pay maintenance costs. In *Cruz v. Cardwell,* 486 F.2d 550 (8th Cir.1973), the issue before this court was whether dismissal on the pleadings was justified where a prisoner brought a section 1983 action alleging that prison authorities had confiscated his money upon arrest. Again, the funds at issue here were earmarked from the beginning for the payment of maintenance costs. Finally, our decision in *Sigler v. Lowrie, supra,* not only fails to support Ervin's claim but is consistent with our disposition of his claim. In *Sigler,* a prisoner had a percentage of his salary from prison labor deposited into his spending account. Under Nebraska law, the account was subject to the warden's discretion; he could pay out funds to the prisoner's family, hold funds until the prisoner was discharged, or cancel credit in the account for disciplinary reasons. The prisoner filed suit under section 1983 when the warden cancelled credit in the account to reimburse the prison for expenses incurred when the prisoner escaped. In light of the warden's statutory authority, we held that his action did not amount to a deprivation of a constitutionally-protected property right. In a similar fashion, the denial of prison earnings to Ervin in accordance with state regulations is not a constitutional deprivation.

 Ervin also argues that a Missouri statute that requires prison authorities to confiscate "contraband" money possessed by an inmate and return it upon discharge prevents the withholding of maintenance costs in the work release program. *See* Mo.Rev.Stat. § 216.310 (1978). This statute has no relevance to the question of whether Ervin had a property interest in receiving the full amount of his salary while enrolled in the work release program.

The withholding of Ervin's salary is not actionable under section 1983. In view of this holding, we have no need to reach the qualified immunity issue. The judgment of the district court is affirmed.