United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1511
_____

Larry L. Christiansen,                        *
                                             *

         Appellant,                 *
                                             *

      v.                          *
                                             *

Harold W. Clarke, Director,        *   Appeal from the United States
Department of Correctional        *   District Court for the District
Services; and Dave Avery,          *   of Nebraska.
Superintendent, Community        *
Corrections Center, Lincoln,       *
Nebraska,                         *
                                             *

         Appellees.                 *

_____

Submitted:  April 17, 1998

Filed: May 29, 1998
_____

Before BEAM, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Larry Christiansen, a former inmate of the Community Corrections Center in
Lincoln, Nebraska, was placed on work release approximately nine months prior to the
completion of his sentence.  Before Mr. Christiansen was placed in the program, its

director required him to sign a statement acknowledging that costs for room and board would be deducted from his inmate account for the duration of the work-release period. Mr. Christiansen signed under protest, asserting that the director did not have the statutory authority to withhold funds to cover the cost of a prisoner's room and board. Upon the completion of Mr. Christiansen's sentence and his release from the program, the prison withdrew $2,790 from his account.

Mr. Christiansen filed suit in district court, alleging that the prison had deprived him of his property without due process of law in violation of 42 U.S.C. § 1983, § 1985(3), and § 1988. The court allowed him to proceed *in forma pauperis* (IFP) under 28 U.S.C. § 1915(a). Shortly thereafter, a magistrate judge[1] recommended that Mr. Christiansen's action be dismissed for failure to state a claim, on the ground that Mr. Christiansen had no property interest in the wages that he earned while on work release. The district court adopted the recommendation and dismissed the complaint *sua sponte*, before service of process and without giving leave to amend it. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Christiansen appeals. We affirm the judgment of the district court.[2]

## I.

Mr. Christiansen makes two arguments. He first contends that 28 U.S.C. § 1915(e)(2)(B)(ii) is unconstitutional because it allows the district court to dismiss the claim of an indigent prisoner plaintiff for failure to state a claim before service of process and without leave to amend. Because a court may not generally dismiss the claim of a paying plaintiff under Fed. R. Civ. P. 12(b)(6) before service of process and without leave to amend, Mr. Christiansen argues that the statutory provision violates

---

[1]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b).

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

his rights to due process and equal protection. *See* U.S. Const. amend. XIV, § 1. Second, he argues that the district court erred in holding as a matter of law that his complaint did not state a claim. We address this second issue first.

Mr. Christiansen maintains that he was denied due process when the defendants deprived him of his wages without statutory authority. As the district court noted, however, Neb. Rev. Stat. Ann. § 83-184(3) gives the director of correctional services the authority to collect from work-release inmates "such costs incident to the person's confinement as the Director of Correctional Services deems appropriate and reasonable." As the court held, moreover, because work release is a privilege that may be granted at the director's discretion, *see* Neb. Rev. Stat. Ann. § 83-184(1)(b), Mr. Christiansen did not have a right to work release, and thus he did not have a right to the full amount of his salary. *See Ervin v. Blackwell*, 733 F.2d 1282, 1286 (8th Cir. 1984).

We agree that under our holding in *Ervin,* because Mr. Christiansen's participation in the work-release program was voluntary, and because he exchanged a portion of his otherwise protected salary for participation in that program, he does not have a constitutionally protected property right to the full amount of his salary. More importantly, however, Mr. Christiansen has simply not stated a due process claim. He does not complain that he was denied a hearing or that he was denied access to constitutionally required procedures; he merely seeks restitution. If the prison violated state law by deducting funds for unauthorized expenses, then Mr. Christiansen may file a suit for conversion, if one is available, in an appropriate court. He has not, however, alleged any facts that suggest that his right to due process was violated.

## II.

Nor are we persuaded that 28 U.S.C. § 1915(e)(2)(B)(ii) is itself unconstitutional. Mr. Christiansen asks us to determine whether the IFP statute survives equal protection rational-basis scrutiny, and we find that it does. Under that

standard, we review the statute to determine whether it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

It is well settled that Congress has a legitimate interest in deterring meritless prisoner litigation. There is abundant evidence that, since the first IFP statute was enacted in 1892, prisoners' suits have accounted for both a disproportionate number of claims filed under IFP statutes and a disproportionate number of meritless claims. *See, e.g., Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir. 1997), *cert. denied*, 118 S. Ct. 192 (1997) (noting that in the Fourth Circuit in 1995, IFP filings accounted for almost half of the caseload, and that prisoners were responsible for 75 percent of those filings); *see also Nicholas v. Tucker*, 114 F.3d 17, 20 (2nd Cir. 1997), *petition for cert. filed* (U.S. Oct. 9, 1997) ("[s]uffice it to say that federal courts spend an inordinate amount of time on prisoner lawsuits, only a very small percentage of which have any merit"). In 1996, Congress responded by passing the Prison Litigation Reform Act (PLRA), which amended a previous version of § 1915 so that § 1915 now creates monetary and procedural disincentives to the filing of meritless cases. *Roller*, 107 F.3d at 230-31. We do not doubt that in preserving scarce judicial resources by deterring baseless, frivolous, and malicious suits, Congress was furthering a legitimate state interest. *See, e.g., In re Sindram*, 498 U.S. 177, 179-80 (1991) (*per curiam*), and *Bankers Life and Casualty Co. v. Crenshaw*, 486 U.S. 71, 81-82 (1988).

Nor do we doubt that Congress chose means rationally calculated to accomplish its intended end. The monetary provisions of the PLRA certainly withstand constitutional scrutiny in that respect. *See, e.g.*, *Nicholas*, 114 F.3d at 20-21, and *Roller*, 107 F.3d at 233-34. Likewise, we believe that the PLRA's additional procedural barriers, like the one at issue in this case, have a rational justification. This provision merely raises the expected cost to a prisoner of filing a meritless lawsuit. Because prisoners, even under the PLRA, initially pay a reduced filing fee (they receive, in effect, an interest-free loan to pay the full filing fee), *see* 28 U.S.C. § 1915(b), and because prisoners have excessive amounts of free time on their hands,

they are more likely than paying plaintiffs to file meritless suits.  By allowing district courts to dismiss all meritless claims before service of process and without giving leave to amend, the statute reduces the cost of those suits to the judicial system.

Even more importantly, however, because under the PLRA prisoners can file only three frivolous, malicious, or meritless suits at the initially reduced rate, *see* 28 U.S.C. § 1915(g), the provision, by increasing the likelihood that a prisoner's meritless claim will be dismissed,  raises the expected cost to the prisoner of each such filing by pushing him or her one step closer to initially having to pay the full filing fee.  Thus, because the provision both reduces the burdens on the judicial system and increases the cost to prisoners of filing meritless claims, it is rationally related to the legitimate interest that the statute seeks to further.

## III.

Mr. Christiansen contends, however, that  in *Nietzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court held that courts may not dismiss meritless IFP claims without adhering to the provisions of Fed. R. Civ. P. 12(b)(6).  We believe that Mr. Christiansen's reliance on *Nietzke* is misplaced.  That case, in interpreting the IFP statute before it was amended by the PLRA, holds only that the statute did not authorize courts to dismiss suits, as frivolous, for failing to state a claim.  *Nietzke*, 490 U.S. at 320, 326, 331.

The case does contain a discussion of Congress's intent to put indigent and paying plaintiffs on the same footing, *id.* at 329-30, but the holding of the Court was simply that a complaint may fail to state a claim without being frivolous.  *Id.* at 331. The Court never intimated that the Constitution required Congress to place these various plaintiffs on an equal footing; it stated only that putting them on an equal footing was Congress's purpose in passing the statute.  *Id.* at 330.  Given the legitimate state interest in deterring meritless claims, however, we believe, as we have said, that

the Constitution certainly authorizes Congress to adjust its notion of "equal footing" enough to inconvenience those who would take unfair advantage of the statute.

## IV.

For the reasons stated, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.