**Robert JONES, Plaintiff,**

v.

**David C. EVANS, F. Richardson, and Bruce Brown, Defendants.**

**Civ. A. No. C80–2175A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 10, 1982.

---

Robert Jones, pro se, Gary P. Bunch, Gambrell & Russell, Atlanta, Ga., for plaintiff.

George M. Weaver, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is a civil rights suit, brought under 42 U.S.C. § 1983. The plaintiff is a state prisoner, currently incarcerated at the Georgia Diagnostic and Classification Center.[1] The plaintiff's *pro se* complaint and request to proceed *in forma pauperis* were received in the clerk's office on April 21, 1980. Approval to file the complaint was granted by this court on December 18, 1980. In February 1982 the plaintiff requested the court to appoint counsel to assist him in pursuing his claims. On March 8, 1982, the court issued an order appointing counsel. That same day defendants Evans and Brown filed a joint motion for summary judgment.

The presence of counsel for the plaintiff has greatly facilitated movement of the case towards resolution. In addition to defendants Evans' and Brown's summary judgment motions, now pending are motions by the plaintiff to amend his complaint; to take depositions other than by stenographic means; to compel production of certain documents; and to have the court order defendant Evans to return the plaintiff to Fulton County Jail. Also pending is the motion of defendant Richardson to quash service or dismiss.

## I. FACTS

The plaintiff alleges that while incarcerated at the West Georgia Correctional Institution ("WGCI") at Columbus, Georgia, a medically prescribed back brace was taken away from him. He also alleges that while at the Middle Georgia Correctional Institution ("MGCI") at Hardwick, Georgia, he was forced to do physically demanding work even though he is totally disabled by a chronic back condition.

The plaintiff injured his back in the mid-1970's while employed as a truck driver for a private employer. A private physician operated on the plaintiff's back in 1976. Following surgery, the physician prescribed use of a back brace and motrin, a pain killing drug. The physician also directed the plaintiff to avoid stooping, bending, or prolonged sitting. *See* Deposition of Robert Jones, October 28, 1981, at 9, 12, 14, 52.

The plaintiff was incarcerated at the Georgia Diagnostic and Classification Center in August 1978 after pleading guilty to criminal charges. The plaintiff alleges that a doctor at the Diagnostic Center gave written permission for him to keep his back brace. The plaintiff was subsequently transferred to WGCI. The plaintiff asserts that while he was at the processing center for new arrivals at WGCI defendant Richardson took his back brace. When the plaintiff protested that use of the back brace was approved by a doctor at the Diagnostic Center, Richardson allegedly said that "The doctor at [the Diagnostic Center] isn't running this place." Deposition of Robert Jones at 17. A substitute back brace, which the plaintiff claims was inadequate, was provided, but not until August 1979, eleven months after the alleged confiscation of the plaintiff's personal back brace.

---

1. The events complained of in this suit occurred while the plaintiff was serving a 24 month sentence beginning in August 1978. He is currently incarcerated on charges arising after his release in August 1980.

The plaintiff alleges that he wrote defendant Evans in January 1979 requesting help in obtaining adequate medical care for his back condition. The defendant also alleges that in the spring of 1979 he spoke with defendant Brown and asked why his back brace was taken. In response, the plaintiff claims, he was shipped the next day to MGCI. At MGCI, the plaintiff was assigned work mopping halls, in contravention of his private physician's order to avoid strenuous work.

The plaintiff alleges that by these actions the defendants showed deliberate indifference to his serious medical needs, thereby inflicting cruel and unusual punishment upon him in violation of the Eighth Amendment.

## II. MOTION FOR SUMMARY JUDGMENT

Defendant Evans was the Commissioner of the Georgia Department of Offender Rehabilitation and Defendant Brown was the Superintendent (Warden) at WGCI during the period of the plaintiff's alleged mistreatment. Evans and Brown seek summary judgment on two grounds. First, they argue that the plaintiff's serious medical needs were not deliberately disregarded even if the plaintiff's back brace was taken, since the plaintiff received alternative treatment for his back problems. Second, they argue that even if, standing alone, taking of the plaintiff's back brace alone could be a violation of constitutional magnitude, they were merely supervisory personnel, and did not cause the alleged violation.[2] A hearing on the summary judgment motion was held May 28, 1982.

On a motion for summary judgment, the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. The evidence presented must be construed in favor of the party opposing the motion, and the opposing party must receive the benefit of all favorable inferences that can be drawn from the evidence. Moreover, in cases involving *pro se* complaints, if the defendant moves for summary judgment, the allegations of the plaintiff's complaint must be liberally construed in determining whether the motion addressed all legal issues raised by the plaintiff. For the reasons set forth below, the court concludes that applying these standards in the instant case, the defendants' motion for summary judgment must be denied.

### A. Deliberate Indifference to Serious Medical Needs by Interference with Prescribed Care

As a first ground for summary judgment, the defendants assert that even if they were responsible for some interference with the plaintiff's care, the deprivation did not reach constitutional dimensions. An inmate's complaint that he received inadequate medical care rises to the level of a constitutional violation only if he alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Thus, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . . ," *id.* at 105, 97 S.Ct. at 291, even if serious medical needs are affected.

The test established by *Estelle* has two distinct elements, deliberate indifference and serious medical needs. Both must be

---

**2.** The defendants also sought to raise a defense of qualified immunity in the brief supporting their motion for summary judgment. While pleading that they acted reasonably and in good faith, the defendants never set forth qualified immunity as an affirmative defense in their answer. Because the defense was not plead, and the defendants have not moved to amend their answer to add the defense, it cannot be asserted at this stage of the litigation. Rule 8(c), Fed.R.Civ.P. *But cf.* 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1278 at 345, & n.50 (amendment to add affirmative defense shall be freely given when justice so requires).

met in order for a plaintiff to recover. Conversely, at least one of these two elements must be shown to be absent before a defendant can succeed on a motion for summary judgment.

*Estelle* was a case in which the plaintiff's complaint focused on disagreement with the prison doctors' course of treatment and adequacy of care. But the courts have recognized that deliberate indifference may be manifested a variety of ways: by prison doctors in their response to a prisoner's needs; by prison guards in intentionally denying or delaying access to medical care; or by prison guards intentionally interfering with treatment already prescribed. *See Estelle*, 429 U.S. at 104–105, 97 S.Ct. at 291; *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970). Each manner of alleged interference raises some unique issues. As a result, the showing necessary to succeed on a motion for summary judgment may vary with the manner in which deliberate indifference was allegedly manifested. Consequently, in analyzing prisoner medical care suits, it is necessary to differentiate the plaintiff's precise allegations.

In the instant case, the plaintiff asserts that his case falls into the category of interference with prescribed care. In his deposition, the plaintiff indicated that during the year between the alleged confiscation of his back brace and its replacement, he received a great deal of medical attention, including daily heat treatments for a month at WGCI, for four months after his transfer to MGCI and intermittently at other times. Although he takes issue with the quality and efficacy of his treatment, the plaintiff

recognizes that mere disagreement as to a particular course of treatment does not state a claim under § 1983. Consequently, at the May 28 hearing the plaintiff argued that the gravamen of his complaint was defendant Richardson's confiscation of his medically prescribed back brace, and he urged the court to focus on this incident.[3]

The defendants' arguments that seizure of the plaintiff's back brace did not result in a wrong of constitutional dimensions, relied heavily on the similar result reached in *Estelle* itself. However, the defendants' analysis failed to account for the factual differences in the nature of the plaintiff's allegations in *Estelle* and in the instant case. In *Estelle*, the plaintiff was injured during a prison work assignment, and he took issue with the adequacy of the treatment he received, at the time of injury, and during the course of his recovery. The named defendants were prison doctors, the warden, and the Director of the Department of Corrections. Although the plaintiff alleged that he was not permitted to move to a lower bunk as ordered by the prison doctor, a prescription was not filled for four days, and at one point, guards denied the plaintiff access to a doctor for several days. The plaintiff's own complaint established that he was examined twice the day of his injury, and seventeen times thereafter over the next three months.

In applying the deliberate indifference-serious needs standard to these facts, the Supreme Court concluded that as to the treating doctor, the complaint alleged no more than a medical malpractice claim, not

---

**3.** At the hearing, the plaintiff also stressed that his work assignment mopping halls was a violation of constitutional magnitude; however, he has not named as a defendant any officials at the institution at which the mopping assignment was made. Nor has the plaintiff alleged any facts to substantiate his conclusion that the mopping assignments at MGCI were in retaliation for statements made to defendant Brown at WGCI.

According to the plaintiff's deposition, one of the doctors who saw the plaintiff after his transfer to MGCI felt the plaintiff did not have a problem with his back. Deposition of Robert Jones at 36. The plaintiff's daily job mopping halls was followed by daily visits to a hospital for heat and whirlpool treatments. *Id.* Therefore, at most, it appears that the MGCI doctor who concluded the plaintiff had no problem with his back, or the medical personnel who administered heat and whirlpool treatments but did not order the plaintiff off his work detail, are subject to malpractice claims. Given the plaintiff's extensive treatment during his stay at MGCI, it is impossible to conclude that any set of facts could be proven to show that his medical treatment there was so inadequate as to constitute an independent violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. at 107, 97 S.Ct. at 292–93.

cognizable under § 1983. With respect to the other named defendants, the court remanded the case to the Court of Appeals. On remand, the Fifth Circuit concluded that no claim was stated against the supervisors for the doctors' actions. *Gamble v. Estelle*, 554 F.2d 653 (5th Cir. 1977). Significantly, the plaintiff had not named as defendants the guards who prevented him from switching bunks or kept him from seeing a doctor for a period of time.

■ In cases alleging a denial of care, or inadequate, negligently provided care, such as *Estelle*, assessment of deliberate indifference weighs equally with assessment of the plaintiff's serious medical needs. A defendant in such cases may show a lack of deliberate indifference by establishing he was generally attentive to the prisoner's needs. By contrast, in cases alleging interference with prescribed care, a defendant has a more difficult task in showing the absence of deliberate indifference. First, in some sense, a non-medical, prison employee's refusal to follow a doctor's instructions regarding a prisoner's care can almost never be characterized as other than deliberate and indifferent. Second, one episode of gross misconduct is not excused by general attentiveness to a prisoner's medical needs. *Murrell v. Bennett*, 615 F.2d 306, 310 & n.4 (5th Cir. 1980). Where a prisoner as in this case, alleges that a guard disregarded written instructions and interfered with prescribed care, question of gross misconduct is raised. *See also Owens v. Haas*, 601 F.2d 1242 (2nd Cir. 1979).

■ A guard's interference with prescribed care does not establish a *per se* case of unnecessary and wanton infliction of pain violative of the Eighth Amendment. A plaintiff prisoner must still show that the interference was unjustified, and that serious medical needs were affected. Moreover, where a plaintiff makes a mixed allegation that interference with prescribed care marked the start of a course of inade-

quate treatment, *Estelle* leaves the door open to an argument by personnel not involved with the interference with prescribed care, that the extent and timing of care given subsequent to isolated incidents of interference can establish that those personnel were *not* indifferent to the prisoner's serious needs.

■ Nonetheless, in the context of a defendant's motion for summary judgment in a case alleging interference with prescribed care, or episodes of gross misconduct, a showing of general attentiveness, is not sufficient to establish an absence of deliberate indifference in the conduct complained of. Assuming, for purposes of the summary judgment motion that the alleged interference occurred, a court's primary attention must be on the second element of the *Estelle* test, the seriousness of the plaintiff's medical needs. In such cases, whether interference with prescribed medical care rises to the level of cruel and unusual punishment depends upon the degree of pain or harm suffered by the prisoner as a result of the interference with prescribed care, the adequacy of alternative care if and when it begins, and whether the interference with care is an isolated event or one incident in a pattern.[4] *See generally, Williams v. Treen*, 671 F.2d 892, 900–01 (5th Cir. 1982); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981); *Dickson v. Colman*, 569 F.2d 1310 (5th Cir. 1978); *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970); *Robert E. v. Lane*, 530 F.Supp. 930, 938 (N.D.Ill.1981).

■ Instead of addressing the issue of the plaintiff's serious medical needs during the period he was without his back brace and offering evidence on the factors listed above, the defendants treated this case as directly analogous to *Estelle*, and simply sought to show that the prison system was generally attentive to the plaintiff's needs. To this end, the defendants attempted to demonstrate that the plaintiff made numerous visits to the prison infirmary, and that

---

**4.** The first two of these factors are simply a function of the seriousness of the plaintiff's need; the third goes to the question of deliberateness, as well as to a recognition that there can be a serious cumulative effect from the repeated denial of care with regard to even minor needs.

along with other care, he received motrin and other drugs, was on a program of whirlpool and heat treatments throughout his two year incarceration, and eventually received a new back brace. As discussed, this approach is inadequate.

In order to counter the plaintiff's allegations in a case such as this, the defendants must demonstrate in their affidavits that even assuming misconduct for which they were responsible led to interference with prescribed care, the misconduct was not gross. In other words, the defendants must show that the interference with prescribed care was not only a temporary aberration in a pattern of attentive care, but also that it was *de minimis.* To make this showing, the defendants, in line with the second prong of the *Estelle* test, must give evidence that the plaintiff's medical needs were not serious, given the duration of the interference with prescribed care. Instead of submitting copies of the plaintiff's medical records the defendants submitted a summary of those records prepared by Norman E. Wood, III, Health Services Administrator for the Georgia Department of Offender Rehabilitation.[5] While an unobjected to summary of the plaintiff's records could be an acceptable basis for summary judgment, the affidavit submitted has various defects. For example, the affidavit indicates that all of the plaintiff's care was given at the Diagnostic and Classification Center, even though the defendants themselves concede this is not so.

Moreover, the affidavit is apparently incomplete. To note one of several discrepancies between the Wood affidavit and other evidence, the affidavit of defendant Evans indicates that the plaintiff was sent to special orthopedic clinics at the Washington Rehabilitation Center. However, the affidavit of Mr. Wood does not reflect any such treatment. (The court does not understand the entry in the Wood affidavit for August 30, 1979,—"Sent back to Orthopedics for reevaluation"—to refer to the special clin-

ics. In any case, that entry does not reflect what occurred at the plaintiff's orthopedic reevaluation).

It is simply impossible to get a complete picture from the Wood affidavit as to precisely where and when the plaintiff received care. The court has no basis for ascertaining what omitted materials might indicate about the plaintiff's condition, and accordingly, summary judgment cannot be granted on the basis of the Wood affidavit.

### B. Lack of Causation

As an alternative ground for summary judgment, defendants Evans and Brown argue that even if confiscation of the plaintiff's back brace did reach to the level of a constitutional violation, defendant Richardson, alone, was the cause of the plaintiff's injuries.

The language of § 1983 requires a degree of causation as an element of individual liability, but it does not specifically require "personal participation." *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir. 1976). Causation against government officials may be established by showing that a plaintiff's injury resulted from execution of governmental policy or custom, *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), or by the officials' failure to properly train, supervise, direct or control the actions of a subordinate, *Pearl v. Dobbs,* 649 F.2d 608, 609 (8th Cir. 1981); *Sims v. Adams, supra.*

The plaintiff's complaint does not make clear what theory of causation the plaintiff relies upon. Defendants Evans and Brown assumed that the plaintiff would attempt to show that confiscation of the plaintiff's back brace was pursuant to a governmental policy or custom. Consequently, they submitted affidavits to the effect that no policy or custom either permitted or tolerated confiscation of inmate

---

5. Mr. Wood asserted that the record was "voluminous" and could not be easily interpreted. Although the court has no medical expertise, it routinely reviews medical records in Social Se-

curity cases. To the extent the records are simply illegible or poorly kept, a transcription or summary can be prepared.

property for other than security or penological reasons, and no policy or custom permitted or tolerated disregarding prisoners' serious medical needs.

The plaintiff's complaint is not easily understood. However, *pro se* complaints must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Although the plaintiff now has counsel, the defendants' summary judgment motion was filed before counsel was appointed, and the plaintiff's complaint has not been amended. *See Hines v. Wainwright*, 539 F.2d 433 (5th Cir. 1976). The court finds that the complaint fairly raises questions of training, supervision and direction of subordinate employees at least as much as it raises questions of the defendants' policies or customs. Indeed, it is as reasonable to assume that the plaintiff would raise issues of training, supervision and direction of subordinates as it was to assume that he would allege that the Department of Offender Rehabilitation had a policy or custom actually sanctioning interference with prescribed medical care.

The defendants argue that their affidavit, stating they neither made nor executed any policy that led to the alleged interference with prescribed care, "clearly covers defendants' duties of training and supervision." However, an averment that no policy made or executed by the defendants led to confiscation of the plaintiff's back brace is not equivalent to an averment that the defendants positively fulfilled duties regarding training, supervision and direction of subordinates.

The defendants' supported their statements that no policy sanctioned disregard of serious medical needs by submitting copies of Rules of the State Board of Corrections, Institutional Operations, Medical Service. There is no indication, though, that the defendants have personal knowledge of how, or if, guards are actually instructed to process incoming prisoners with medical devices in compliance with these broad rules.[6] Equally significant, the defendants make no

reference to whether they reviewed defendant Richardson's employment record to see if he had been the subject of an undue number of legitimate complaints by other prisoners. Obviously, such a finding could support an inference of failure to supervise or direct. *See Chestnut v. Quincy*, 513 F.2d 91 (5th Cir. 1975).

The court accepts the unrebutted statements of defendants Evans and Brown that no policy or custom would have authorized the acts complained of by the plaintiff. In order to prevail on summary judgment on the ground of lack of causation, however, they must proffer some evidence as to the training, supervision and direction of defendant Richardson.

Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results. *See Murrell*, 615 F.2d at 309. Caution in the use of summary judgment is particularly appropriate in cases such as this. *See Id.* at 310; *see also Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976); *Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973).

There is a great deal in the record to indicate that defendants Evans and Brown could supply the necessary affidavits and evidence to prevail on a motion for summary judgment. At the present, however, they have failed to meet the burden which is theirs as the summary judgment movants. The defendants' motion for summary judgment is DENIED with leave to refile the motion before a pretrial order is due.

## III. OTHER MOTIONS

### A. Plaintiff's Motion to Amend and Defendant Richardson's Motion to Quash or Dismiss

In his original complaint, the plaintiff inadvertently listed defendant Richardson's first initial as "L" instead of "F". Richardson asserts that because of this misnomer he was not served until April 1982, after the applicable statute of limitations ran. Accordingly, he argues that it would be preju-

---

6. Training materials submitted in connection with motions for discovery were not addressed

by any of the defendants' summary judgment materials.

dicial to allow the plaintiff to amend at this late date.

 Leave to amend shall be freely given. Rule 15, Fed.R.Civ.P. The court finds the interests of justice are served by ALLOWING the plaintiff's amendment. Defendant Richardson's motion to quash is DENIED. Richardson's motion to dismiss is premature. It is DENIED without prejudice. Defendant Richardson may raise his statute of limitations defenses by an appropriate motion, after any necessary discovery. The plaintiff may also raise any arguments as to whether the amendment should relate back by motion, after any necessary discovery. *See, e.g.,* the issues raised in *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir. 1980); *Marks v. Prattco, Inc.,* 607 F.2d 1153 (5th Cir. 1979).

### B. Plaintiff's Motion to Take Depositions By Other Than Stenographic Means

 The plaintiff has moved to take depositions by other than stenographic means pursuant to Rule 30(b)(4), Fed.R. Civ.P. Leave to take depositions by other means is GRANTED, subject to the following limitations:

1. The depositions shall be recorded by means of reliable equipment, capable of producing clear recordings. The plaintiff is responsible for providing this equipment.

2. Two recorders shall be used and two original recordings shall be made of each deposition.

3. An independent, third party shall be present run the recording equipment. At the conclusion of each deposition session, one original recording shall be placed in a sealed envelope and given to the third party for prompt filing with the clerk.

4. A transcript will be prepared by the plaintiff, and a copy provided to the defendants. The defendants shall be given access to the recording from which the transcript was made.

5. The transcripts shall be presented to the deponents for their signatures pursuant to Rule 30(e), Fed.R.Civ.P.

6. Whenever necessary for clarity during the deposition, participants shall identify themselves. The end of the deposition, including date and time shall be announced.

*See Colonial Times, Inc. v. Gasch,* 509 F.2d 517 (D.C.Cir.1975); *Barham v. IDM Corp.,* 78 F.R.D. 340 (N.D.Ohio 1978); *Champagne v. Hygrade Food Products, Inc.,* 79 F.R.D. 671 (E.D.Wash.1978).

The independent, third party need not be specially trained. However, the combative, uncooperative atmosphere of the discovery process to this point indicates that a third party is necessary to test and monitor the recording equipment, as well as to take custody of the original tape.

### C. Plaintiff's Motion to Compel Production of Documents

 The plaintiff served interrogatories on defendants Evans and Brown on March 23, 1982. The plaintiff maintains that the interrogatories were accompanied by a request for production of documents, but the defendants claim they never received the document request. In a phone conversation in April 1982 the plaintiff's counsel learned that the defendants did not receive the request for document production. Plaintiff's counsel read his request over the phone, and then claims to have served a duplicate of the document request by mail. The defendants deny receipt of this mailed request.

Counsel met for a conference pursuant to local rule 91.62 on May 7, 1982. Upon learning that the defendants did not receive the mailed copy of the document request, plaintiff's counsel personally served the document request on defendants during the conference. Instead of then settling upon a schedule for production of documents at the conference, the parties fell into a dispute as to whether the conference should deal only with the plaintiff's interrogatories, or also with the request for documents. The plaintiff then sought an order compelling production. Both sides have moved for costs

on the discovery motions. Obviously, the parties' approach to discovery conferences vitiates the spirit of rule 91.62 and generates unnecessary motions and delay.

The court was lead to believe by the parties' briefs that the defendants have answered, or are answering all interrogatories asking for identification of documents, except for interrogatories 16 and 32 (the parties should inform the court, if necessary, as to whether interrogatory 10 was answered). Accordingly, as the court understands the situation, all documents requested, with the exception of the documents identified in those two interrogatories, have been or will be produced.

The plaintiff's motion to compel is DENIED with respect to documents identified by interrogatory 16 unless the defendants seek leave to amend their complaint to add a qualified immunity defense. With respect to interrogatory 32 the plaintiff's motion is GRANTED in part. The defendants are required to produce documents only with respect to subordinates at WGCI during the time of, or two years before, the plaintiff's incarceration at that institution.

### D. Plaintiff's Request for Transfer

The plaintiff's request for transfer to the Fulton County Jail is DENIED. Prison administrators have discretion to select in which institution prisoners will be housed. The prisoner has no right to designate his own place of incarceration. Filing a lawsuit or hiring an attorney does not entitle a prisoner to a transfer in order to facilitate meetings between the prisoner and his attorney.

All other pending motions are DENIED.