Arthur LEWIS, Plaintiff,

v.

Gordon H. FAULKNER, Robert P. Heyne, H.W. Cody, Ann Bolls, and Dan Rau, Defendants.

No. S 80–90.

United States District Court, N.D. Indiana, South Bend Division.

March 28, 1983.

---

Arthur Lewis, pro se.

Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for defendants.

MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case was filed pursuant to 42 U.S.C. § 1983 by an inmate at the Indiana State Prison, Michigan City, Indiana, against various members of the Indiana Department of Correction. The matter is presently before this Court on defendants' renewed motion for summary judgment. Before proceeding to a discussion of the merits, however, a brief recapitulation of the history of this case is in order.

This action was originally filed on March 31, 1980. On June 20, 1980, defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. Because the motion was heavily supported by numerous exhibits, including affidavits, the motion was addressed as one for summary judgment. The plaintiff never filed anything in opposition to the defendants' motion, and on July 28, 1980, this Court entered summary judgment in favor of the defendants and against the plaintiff.

On appeal, the decision of this Court was vacated and remanded in a published opinion, *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). In *Lewis,* the Court of Appeals held that

> a district court cannot properly act on a motion for summary judgment without giving the opposing party a reasonable opportunity to submit affidavits that contradict the affidavits submitted in support of the motion and demonstrate that there is a genuine issue of material fact which precludes granting the defendants summary judgment.

*Id.,* at 101. In its opinion, the Court of Appeals acknowledged that this Court had provided the plaintiff with adequate time in which to file a response to the defendants' motion for summary judgment. However, the Court went on to hold that adequate *time* is not necessarily tantamount to "reasonable opportunity" where the plaintiff is a *pro se* inmate. Thus,

> [s]ince few prisoners have a legal background, we think it appropriate to lay down a general rule that a prisoner who

is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits to a motion for summary judgment.

*Id.,* at 102. In dictum, the Court declared in hortatory language its desire that

> counsel for the defendants in prisoner civil rights cases in this circuit will lift this new burden from the judges' shoulders, by henceforth including in any motion for summary judgment in a case where the plaintiff is not assisted by counsel a short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion.

*Id.* Notwithstanding the above, the new rule set forth in *Lewis* imposes an obligation that ultimately rests solely with the district courts. *Id.,* at 103.

Although the decision of the Court of Appeals was handed down on August 25, 1982, plaintiff failed to provide this Court with anything further in the way of affidavits or other documentary evidence to contradict the assertions made by the defendants in their original motion for summary judgment. Accordingly, on December 22, 1982, defendants filed a Motion to Renew Motion for Summary Judgment. At page one of their motion, defendants included the following language:

> In support of this motion, the Defendants incorporated by reference the materials filed by them in support of their original Motion to Dismiss or in the Alternative for Summary Judgment. Rule 56(e) of the Federal Rules of Civil Procedure provides in part that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial and that if he does not

respond then summary judgment may be entered against him. Factual assertions contained in material submitted by the Defendants will be accepted as true by the Court in the absence of affidavits or other material filed by the Plaintiff contradicting the assertions.

On January 7, 1983, this Court entered an order, directed to the plaintiff, in the following language:

Defendants have filed a Motion for Summary Judgment. Pursuant to the holding of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), plaintiff is hereby given to and including January 24, 1983, in which to respond to said motion. Plaintiff is admonished that failure to respond to the motion filed by defendants may, under the Federal Rules of Civil Procedure, result in judgment being entered against him. *See* F.R.Civ.P. 56(e).

On January 13, 1983, this Court granted plaintiff's request for an additional thirty days within which to respond to defendants' renewed motion for summary judgment. Thereafter, on February 16, 1983, plaintiff filed a brief, two-page response that summarized, in five numbered paragraphs, those allegations already set forth in his original complaint filed almost three years earlier. To date, and despite the clear language of the Court's opinion in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), of the defendants' renewed motion for summary judgment, and of this Court's order dated January 7, 1983, all of which directed the plaintiff's attention to Rule 56(e) of the Federal Rules of Civil Procedure, plaintiff has failed to provide this Court with anything to contradict the assertions made by defendants in favor of their motion for summary judgment. This Court now turns, again, to an examination of the record.

While incarcerated at the Westville Correctional Center in Westville, Indiana, plaintiff was charged with aiding in the escape of other inmates. As a result of those charges, plaintiff appeared before the Center's Conduct Adjustment Board (C.A.B.), where he was found guilty and ordered transferred to the Indiana State Prison.

Plaintiff contends that there were various procedural irregularities in the C.A.B. hearing which deprived him of his due process rights. Specifically, plaintiff alleges that he was denied the assistance of an effective lay advocate; that he was not provided an investigation summary; that he was denied the right to call as a witness on his behalf one of the inmates involved in the escape; and, that he never received a summary of the evidence relied on by the C.A.B. Plaintiff seeks both declaratory and injunctive relief, viz, that the acts of the defendants be declared unconstitutional, that the evidence in support of the charges be removed from his dossier, and that he be returned to the Westville Correctional Center.

■ At the outset it must be noted that the role of a federal court in reviewing exercises of prison discipline is a narrow one, i.e., the federal court is not to sit as a trial *de novo,* but rather must act to ensure that appropriate procedural safeguards were complied with. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1979); *Gibson v. McEvers,* 631 F.2d 95 (7th Cir.1980); *Hayes v. Walker,* 555 F.2d 625 (7th Cir.1977), *cert. den.,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1978); *United States ex rel Miller v. Twomey,* 479 F.2d 701 (7th Cir.1973), *cert. den.,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). Thus, the federal court in a § 1983 action must not substitute its judgment for that of the prison's authorities, *Wolff v. McDonnell, supra,* unless such findings are unsupported by *any* evidence, or are wholly arbitrary and capricious. *Smith v. Rabalais,* 659 F.2d 539 (5th Cir.1981), *cert. den.,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982). This is largely because the administration of a state prison is a matter peculiarly within the province of the prison's authorities, and not that of the court. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

A careful review of the record in this case reveals the following. Plaintiff was given more than three weeks between the time of his being charged with assisting others to escape (June 20, 1979) and his appearance

before the C.A.B. (July 13, 1979). A lay advocate was appointed to assist him in the preparation of his defense. At the hearing, plaintiff was allowed to present his version of the incident, as well as any evidence in support thereof. Plaintiff was afforded the opportunity to present written statements by other inmates. The statement of the reporting officer as well as the incident report were made available to the plaintiff, which, along with the statements of other inmates, constituted the evidence presented against him at the C.A.B. hearing. Upon the return of an adverse decision by the C.A.B., plaintiff was permitted an appeal to the Superintendent of the Westville Correctional Center. Plaintiff availed himself of that right, and the decision of the C.A.B. was upheld.

■ It is true that the State may not generally prohibit lay advocates from advising or assisting other inmates. *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Further, the states have an affirmative obligation to provide prisoners either with adequate law libraries, or persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Garza v. Miller,* 688 F.2d 480 (7th Cir.1982). Even so, inmates appearing before prison disciplinary boards have no right to counsel. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Thus, while an inmate may be entitled to the assistance of a lay advocate, the fact that he does not get the lay advocate of his choice does not rise to the level of a constitutional deprivation. *Hendrix v. Faulkner,* 525 F.Supp. 435 (N.D. Ind.1981).

■ As for plaintiff's argument that he was denied due process of law because of the C.A.B.'s unwillingness to allow Mr. Staggs to appear in person to testify at the disciplinary hearing, it must be borne in mind that an inmate has no absolute right either to call or to cross-examine witnesses at such proceedings. *Baxter v. Palmigiano, supra; Ra Chaka v. Nash,* 536 F.Supp. 613 (N.D.Ill.1982); *King v. Wells,* 94 F.R.D. 675 (E.D.Mich.1982). This is in keeping with

the rule of limited review that prison officials are afforded broad discretion in balancing an inmate's right to call witnesses in disciplinary proceedings against the prison's interests in maintaining order and imposing strict punishment on malefactors. *Chavis v. Rowe,* 643 F.2d 1281 (7th Cir.), *cert. den.,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981); *Hayes v. Walker,* 555 F.2d 625 (7th Cir.), *cert. den.,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). See also, generally, *McCollum v. Miller,* 695 F.2d 1044 (7th Cir. 1982); and *Hayes v. Thompson,* 637 F.2d 483 (7th Cir.1980).

■ In the present case, the record reveals that inmate Staggs was confined in a disciplinary unit at the time of the hearing. It is the policy of the Westville Correctional Center that those inmates confined to a disciplinary unit for serious infractions may not appear to testify in person at C.A.B. hearings. Nonetheless, such individuals are free to provide written statements on behalf of those desiring their testimony at such hearings, and inmates are free to solicit such written statements from those on disciplinary lockup. Plaintiff was granted leave to obtain the written statement of inmate Staggs, and he presented that written statement to the C.A.B., which was considered by the Board at the hearing. While this Court might prefer a bit more elaboration in the record on this point, the Court nonetheless concludes that the defendants have demonstrated a *bona fide* reason justifying the absence of inmate Staggs from plaintiff's disciplinary hearing, and that the submission of the witness' written statement in lieu of his personal testimony was not a denial of due process.

Plaintiff also insists that his transfer from Westville to the State Prison was improper.

■ It is axiomatic that a state prison inmate has no liberty interest originating in the Constitution of the United States in remaining in a particular penitentiary. *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982). Accordingly, the Due Process clause does not, in and of itself, require hearings

in connection with the intrastate transfer of a prisoner, even where such transfer may result from the inmate's misbehaviour, i.e., where it is labeled "punitive" or "disciplinary." *Shango v. Jurich, supra.* The above is a recognition of the pronouncements of the Supreme Court of the United States in the companion cases of *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), that the transfer of a prisoner from one prison to another does not infringe on any protected liberty interest. Thus, so long as such transfers are discretionary with the prison authorities, and the inmate has no identifiable right or justifiable expectation that he will not be transferred except for misbehavior, no deprivation of any constitutional rights can result therefrom. *Vitek v. Jones,* 445 U.S. 480, 489, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980). See also, generally, *Kincaid v. Duckworth,* 689 F.2d 702 (7th Cir.1982); *Jones v. Evans,* 544 F.Supp. 769 (N.D.Ga.1982). Accordingly, plaintiff's arguments that he should not have been transferred from Westville to the State Prison, and demands that he be returned to Westville, are wholly without merit and must fail.

■ Finally, plaintiff's arguments concerning the failure of the C.A.B. to provide him with summaries of the investigation and report are also without merit. The record clearly discloses that plaintiff was permitted to see the report and evidence used against him at the hearing; due process requires no more. Particularly in a prison setting, an atmosphere that can be only described as one of potentially explosive controlled violence, the possibility of such documentary evidence falling into the hands of other inmates, and the likelihood of harm resulting to those who may have submitted written statements or otherwise assisted in the investigation, constitute a strong justification for limiting the flow of such paperwork. Research by this Court has disclosed no cases holding to the contrary.

Before proceeding to the entry of judgment in this case, however, a minor digression on some of the questions raised herein seems in order. The federal judiciary has, on occasion, demonstrated a willingness to curtail some of the more egregious aspects of the mushrooming area of prisoner litigation in the federal courts. See, e.g., *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Green v. Warden,* 699 F.2d 364, (7th Cir.1983); *Williams v. Goldsmith,* 701 F.2d 603 (7th Cir.1983). Even so, the general trend over the past several years has been one of a more expansive role on the part of the courts in entertaining prisoner petitions, be they civil rights actions filed pursuant to 42 U.S.C. § 1983 or habeas corpus petitions filed under 28 U.S.C. § 2254. See, generally, D. Bagwell, "Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435–462 (1982). Coupled with this increased emphasis on an ever more solicitous approach to individual prisoner actions in the courts is the swelling tide of filings by inmates of such suits in federal district courts. Twenty years ago, the aggregate total of *all* prisoner petitions, state and federal, § 1983 and habeas corpus, was only slightly in excess of 4,000; in the twelve months ending June 30, 1982, the total number of such petitions filed in the federal district courts exceeded 30,000. Administrative Office, United States Courts, The United States Courts: A Pictorial Summary for the Twelve-Month Period Ended June 30, 1982, 11 (1982). While some of this growing body of law has no doubt proven salutary, more than one judge has complained that "it is beyond dispute that the overall energies and resources of the Court are being inefficiently and distressingly directed to the resolution of a set of cases that demonstrably now only rarely include any that are revealed in the end to have merit." Judge Phillips, United States Court of Appeals for the Fourth Circuit, in

the Foreward to the Fourth Circuit Review, 39 W. and L.L.Rev. 425 (1982), as quoted in *Juncker v. Tinney,* 549 F.Supp. 574, 583 n. 15 (D.Md.1982). For examples of three particularly frivolous prisoner filings, see R. Richards, "Frivolous or not, state answers suits," News-Dispatch (Michigan City, Indiana) March 14, 1983 at 1.

In the present case, despite the fact that the law is clear on the issues raised by the plaintiff in the complaint, and that plaintiff has demonstrated only marginal interest in presenting and prosecuting the action at the district court level, the case is now three years old, has been up on appeal and back once, and will no doubt shortly resume its upward progress again.

After a careful review of the complete file in this matter, this Court hereby GRANTS the renewed motion for summary judgment in favor of defendants and against the plaintiff. SO ORDERED.