Terry LASTER, Plaintiff,

v.

Jack R. DUCKWORTH, Defendant.

No. S 81–279.

United States District Court, N.D. Indiana, South Bend Division.

Jan. 18, 1983.

Terry Laster, pro se.

Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case was filed under 42 U.S.C. § 1983 by an inmate at the Indiana State Prison against the prison's superintendent and the Sheriff of St. Joseph County, Indiana. On January 8, 1982, a pretrial conference was held in this matter, at which time this Court granted a motion for summary judgment filed by the defendant Sheriff and dismissed that defendant from the case. Thereafter, on April 1, 1982, the remaining defendant, Jack R. Duckworth, Superintendent of the Indiana State Prison, filed a motion for summary judgment. On December 6, 1982, plaintiff filed his response to said motion. This case is presently before the Court on defendant's Motion for Summary Judgment.

The underlying facts in this case, which do not appear to be in dispute, are that the plaintiff was confined in the St. Joseph County Jail in South Bend, Indiana, on April 12, 1981, awaiting trial on state criminal charges. On that date, plaintiff and several other pretrial detainees become involved in a serious disturbance at the jail. Because of plaintiff's participation in this disturbance, the Chief Deputy Prosecutor for St. Joseph County formally requested the Judge of the St. Joseph Circuit Court to transfer the plaintiff and certain other inmates at the jail to the Indiana State Prison at Michigan City, Indiana, for temporary safekeeping. That petition reads as follows:

Comes now the State of Indiana by Chief Deputy Prosecuting Attorney, Michael A. Scheer, and petitions the Court to transfer custody of the defendant in the above-captioned cause to the Department of Corrections, in particular, the Indiana State Prison in Michigan City, Indiana, for the reason that continued custody of the defendant in the St. Joseph County Jail presents security problems for the St. Joseph County Police Department. In support thereof, your petitioner states that the initial investigation of the attempted jail break which occurred on April 12, 1981, reveal that the defendant herein was responsible in part for the leadership of those inmates so involved. Further, that as of this date the above-named defendant continues to act in a manner which presents security problems for the St. Joseph County Police Department.

On April 13, 1981, the St. Joseph Circuit Court granted the above petition and ordered the transfer of plaintiff from the St. Joseph County Jail to the Indiana State Prison. The order of Robert W. Mysliwiec, Judge *Pro-tempore* of the St. Joseph Circuit Court, reads as follows:

The Court having been presented with a petition to transfer custody of the defendant in the above-captioned cause, now finds that the continued incarceration of the defendant herein in the St. Joseph County Jail will present security problems for that jail, now orders custody of the above-named defendant transferred to the Department of Corrections for security reasons and orders the Sheriff of St. Joseph County to transport the defendant herein to the Indiana State Prison in Michigan City, Indiana, and deliver the above-named defendant into the custody of the Warden of said prison and that the Warden of said prison shall hold and safely keep the said defendant in his custody and control until further order of this Court.

IT IS FURTHER ORDERED that the Sheriff of St. Joseph County, Indiana, shall deliver a copy of this order to the Warden of the Indiana State Prison contemporaneously with the delivery of the person of said defendant and that this order shall be sufficient authority in and for the Warden to hold and safely keep the said defendant in his custody and control at the Indiana State Prison until further order of this Court.

That same day (April 13, 1981), plaintiff was delivered to the prison as a safekeeper, i.e., a pretrial detainee ordered held in special protective custody for security reasons. At approximately the same time others who had been involved in the jail disturbance arrived at the prison, also as safekeepers.

Pursuant to the transfer order of the St. Joseph Circuit Court, supra, copies of the petition and order were provided prison authorities upon the plaintiff's arrival. Thus, prison officials were aware of the reasons why the plaintiff had been transferred to the prison as a safekeeper. Further, and after the safekeepers from the St. Joseph County Jail had been processed, classified, and admitted to the prison, it was decided by prison officials that those newly arrived inmates should be split up and housed separately in secure units at the institution. The plaintiff was assigned to the I Cellhouse Detention Unit (IDU), where conditions were and are admittedly more restrictive than those imposed on the prison's general population.

While in the IDU in safekeeper status, plaintiff allegedly received threatening notes from other inmates in the area, and on May 3, 1981, plaintiff complained that he had been the victim of a stabbing. An examination revealed that plaintiff had indeed suffered a laceration on his upper back, and he was taken to the prison hospital for treatment. Shortly thereafter, plaintiff was transferred to the Admissions and Orientation Unit (A & O), an area of maximum individual security normally reserved for new inmates and inmates voluntarily placed on "self lockup." On January 1, 1981, plaintiff was removed from A & O and returned to the St. Joseph County Jail.

In his complaint, plaintiff asserts that he was improperly assigned by the defendant to IDU because a pretrial detainee ought not be subjected to prison conditions more restrictive than those imposed on convicted felons. Further, plaintiff alleges that the defendant was put on notice of imminent danger to the plaintiff posed by other inmates on IDU, but ignored repeated requests by the plaintiff that he be transferred to another area of the prison. Plaintiff contends that these actions by defendant Duckworth constituted violations of the plaintiff's Eighth and Fourteenth Amendment rights. Each of the two issues raised will be addressed in its turn.

■ The Supreme Court of the United States has established and that the appropriate test, under the Fourteenth Amendment, is whether the "conditions amount to punishment of the detainee." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).

> [T]he determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose. *Wolfish,* 441 U.S. at 561, 99 S.Ct. at 1886.

This Court and the United States Court of Appeals for the Seventh Circuit reviewed the circumstances and conditions of safekeepers housed at the Indiana State Prison in *Lock v. Jenkins,* 464 F.Supp. 541 (N.D. Ind.1978); 641 F.2d 488 (7th Cir.1981). At the time the *Lock* case was tried

> [m]ost safekeepers arrive at the prison with a committing order which does not specify the reason for commitment, unless the detainee is in need of medical care. The detainees needing medical care are housed in the prison hospital. The remaining detainees are housed in the Admissions and Orientations (A & O) Unit, although in the past detainees were held in other security units. The reasons for placement in the A & O Unit were that "the committing authority provides

no background information thus it is safer to isolate them from the general prison population and that unit is the best possible place consistent with good safety and security not only for the detainee but for convicted inmates and staff." 464 F.Supp. at 544. The court found that the prison officials attempted to get background information about pretrial detainees from the committing courts. The prison officials do not determine where to place the detainees on the basis of individual needs but rather assign all but the medical cases to the A & O Unit. 641 F.2d at 492.

The Seventh Circuit concluded that, in the absence of particular information

... confinement of these detainees in a prison maintained primarily for the purpose of punishment of convicted persons, under conditions more burdensome than those imposed on the general population of convicted felons, amounts to punishment under *Bell v. Wolfish.*

\* \* \* \* \* \*

*Granting that the state's interest in secure confinement of the safekeepers may justify confinement of particular detainees under restricted conditions because of their known characteristics, the additional severity of treatment in the absence of knowledge of their individual characteristics is clearly excessive and thus amounts to punishment* under the *Wolfish* test. 441 U.S. at 538–39, 561, 99 S.Ct. at 1873–74, 1885. 641 F.2d at 494. (emphasis added).

The Seventh Circuit also stated that: The prison officials here cannot justify the restrictive conditions imposed upon all safekeepers by referring to the officials ignorance of the reasons these pretrial detainees are sent to the prison. *There may be individual safekeepers who must be kept in very restrictive conditions, but that determination must be made upon facts about the individual safekeeper provided by the committing court or discovered by the prison's counseling staff.* 641 F.2d at 494. (emphasis added)

Thus, at the time *Lock v. Jenkins* was tried, the prison had no classification process regarding safekeepers and was generally unaware of the reasons for the inmate having been sent to the prison as a safekeeper. For that reason the Seventh Circuit found that it was "impossible for prison officials to know what restrictions on each safekeeper are necessary to preserve internal order and effectively manage the institution." *Lock v. Jenkins,* 641 F.2d at 497. The Seventh Circuit, in *Lock,* further held that "absent a rational justification of the different treatment, there is a violation of equal protection when pretrial detainees are held in more burdensome conditions of confinement than convicted offenders in the same institution." *Lock v. Jenkins,* 641 F.2d at 497.

However those circumstances do not apply in this case. Material was sent to the prison authorities with the inmates who were transferred to the prison from St. Joseph County on April 13, 1981, and the prison authorities were aware of Laster's previous behavior and the reasons for the transfer of Laster and the others to the prison from the St. Joseph County Jail. This information established that those safekeepers, including Laster, had engaged in joint activity in attempting to take over the jail and were being sent to the prison for security reasons. The arrival, at the same time, of several safekeepers who, just prior to their arrival, had worked in concert to take over a county jail posed a security risk to the prison. Accordingly there is no question that the defendant and his subordinates undertook a classification process in this case; they had information on why Laster and the others had been sent to the prison; and they had a rational basis for their determination that it was necessary to break this group up and house them in separate secure units in order to preserve internal order and effectively manage the institution. After the alleged stabbing Laster was transferred to the Admissions and Orientation Unit (A & O) which is considered the most secure unit at the prison and is often used to house inmates who

were, or may have been, subjects of assaults elsewhere in the institution.

 The Seventh Circuit has held that individual safekeepers may be kept in restrictive conditions where there has been a determination made upon the facts about the individual safekeeper provided by the committing court or discovered by the prison staff. It is only the additional severity of treatment in the absence of knowledge of their individual characteristics that "is clearly excessive and thus amounts to punishment . . ." *Lock v. Jenkins,* 641 F.2d at 494. Here facts concerning the past behavior and individual characteristics of Laster were available and these facts fully justify the steps taken by the prison administration.

Thus, because the facts relating to the reasons for plaintiff's initial assignment to the IDU are not in dispute, this Court holds as a matter of law that there was no deprivation of plaintiff's Fourteenth Amendment right to due process of law.

 Plaintiff raises as his second argument that defendant Duckworth violated the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by ignoring repeated requests from the plaintiff that he be transferred from IDU to another area because of threats from other inmates. A careful review of the record shows that, while the plaintiff claims to have put several prison officials on notice that he had received threats prior to his stabbing and had requested a transfer, prison authorities deny any foreknowledge whatsoever of threats made to, or requests for transfer by, the plaintiff. Thus, the very essence of plaintiff's Eighth Amendment claim hinges on whether the plaintiff had in fact forewarned the prison's authorities, clearly a question of fact.

Rule 56(c) of the Federal Rules of Civil Procedure states, in relevant part, that [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Because a genuine issue of material fact exists concerning notice given the prison's authorities by the plaintiff of his fear of an assault and his requests for transfer, defendant's motion for summary judgment must be denied as to that portion of plaintiff's claim. Therefore, and based on the foregoing analysis, defendant's Motion for Summary Judgment is GRANTED as to that portion of plaintiff's complaint relating to an alleged deprivation of plaintiff's Fourteenth Amendment rights because of his initial assignment to IDU; and DENIED as to the remaining claim of an Eighth Amendment violation due to the defendant's alleged failure to respond to the plaintiff's warnings and requests for transfer. SO ORDERED.