**William Earl PENN, Jr., Plaintiff,**

v.

**William A. STARKS, Doctor, Defendant.**

**No. S82–525.**

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 29, 1983.

William Earl Penn, Jr., pro se.

David A. Nowak, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM and ORDER

ALLEN SHARP, Chief Judge.

This case was filed pursuant to 42 U.S.C. § 1983 by an inmate at the Indiana State Prison in Michigan City, Indiana, against a physician. Jurisdiction of this court over the claim is predicated on a federal civil rights question under 28 U.S.C. §§ 1331, 1343. The matter is presently before this court on defendant's motion for summary judgment.

The defendant filed his motion for summary judgment with supporting memorandum, affidavit, and exhibits, on September 29, 1983. On October 7, 1983, this court entered the following order:

Defendant(s) have (sic) filed a motion for summary judgment to dismiss. (sic) Pursuant to *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), plaintiff's attention is directed to Rule 56(e), F.R.Civ.P., which reads, in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Accordingly, plaintiff is hereby given to and including October 31, 1983, in which to respond. SO ORDERED.

Notwithstanding the above admonition, plaintiff has yet to file any response to defendant's motion.

This court further notes that, at the pretrial conference held in this matter on May 27, 1983, at the Indiana State Prison, plaintiff was specifically admonished by the court to file his response to a motion for summary judgment no later than November 1, 1983. Thus, and despite two warnings from this court, one oral, the other in writing, plaintiff has taken no action in this case, and has filed no pleadings, since the filing of the complaint more than one year ago.[1]

---

1. This court notes an added peculiarity in this case. On August 30, 1983, this court received a

Turning now to the merits of defendant's motion, this court notes that the defendant's pleadings in support of said motion, being uncontroverted, must be accepted as true. F.R.Civ.P. 56(e). The facts are as follows.

The defendant, William A. Starks is a consulting orthopedic surgeon to the Indiana State Prison at Michigan City, Indiana. His duties include examining and treating those inmates suffering orthopedic problems that are referred to him by prison staff physicians. The referred inmates are examined and treated at the prison during scheduled clinics.

On July 26, 1982, the defendant, pursuant to a normal referral from prison staff physician Dr. Weldon Cooke, examined inmate William Penn. On July 26, 1982 Dr. Starks had access to, and had received the following:

1. Records in the medical packet of inmate Penn that revealed that he had been in an automobile accident in February of 1982 while on parole, that resulted in injury to both knees.

2. Records that revealed that while incarcerated at the Indiana State Reformatory during a visit to Wishard Memorial Hospital in Indianapolis, Indiana on March 17, 1982 the plaintiff slipped out of a van and injured his left knee further.

3. Records of X-rays of both knees taken by staff at Wishard Memorial Hospital on June 14, 1982.

4. Consultation Requests and Reports from staff at Wishard Memorial Hospital dated February, March and April 1982.

5. X-rays of plaintiff's left knee and follow-up reports taken at the I.S.P. on July 23, 1982.

6. Sick call records of inmate Penn while incarcerated at the Indiana Reformatory, Westville Correctional Center and I.S.P. that were replete with entries stating complaints of pain in both knees and resulting treatment.

7. The diagnosis made by Dr. O'Brien the defendant's professional partner, made at Westville Correctional Center where he is an orthopedic consultant, that inmate Penn had instability of the left knee.

As a result of his examination of July 26, 1982 and of the above information, including X-rays, Dr. Starks performed an arthroscopy on inmate Penn's left knee on August 3, 1982. As a result of the arthroscopy Dr. Starks concluded that a surgical operation to inmate Penn's left knee would be required. This surgery was performed at Memorial Hospital in Michigan City on August 19, 1982, at which time the colateral ligament was repaired in a pinning process, and two torn medial meniscus were extracted.

Following this operation Dr. Starks prescribed all necessary medication which would have been administered by Memorial Hospital Staff.

Upon inmate Penn's return to I.S.P. the course of events becomes absurd. On September 11, 1982, inmate Penn, on his own volition, removed his post-operative cast applied by Dr. Starks to his left knee. The cast was reapplied. On September 12, 1982 inmate Penn slipped while taking a bath, allegedly split his cast, and again on his own volition removed the cast. On September 13, 1982, contrary to all physician's instructions, inmate Penn refused to use

letter dated August 25, 1983, from Timothy A. Carroll, Esq., of the Chicago lawfirm of Winston & Strawn. In that letter, which was filed and made a part of this record, Mr. Carroll attached a copy of what purported to be the clerk's minute sheet from the May 27, 1983 hearing. This "minute sheet" had plainly been altered to read that the defendant had been ordered to "pay $800,000 to plaintiff at Michigan City State Prison on 9/1/83." Mr. Carroll indicated in his

letter that the plaintiff had sent him the fraudulently altered minute sheet, asking that Mr. Carroll collect the $800,000 for him. The altered document is a forgery, clearly inconsistent with the minute sheet contained in this case's record, and is a fraud on this court.

While this court expresses no opinion as to who may have altered the copy of the correct minute sheet, the fraudulent entry bears a marked similarity to plaintiff's penmanship.

crutches and bore his weight on his left knee, and on September 14, 1982, allegedly became involved with another inmate at the prison hospital during which he was kicked in the knee. On September 15, 1982, Dr. Cooke made an entry in the sick call records that inmate Penn refused all medical instruction and advice. On September 16 and 17, 1982, inmate Penn returned to the hospital and complained of pain in his left knee and was administered a pain shot. Although it was Dr. Starks' medical opinion that a patient should not need pain medication after 10 or 14 days subsequent to such surgery, inmate Penn was nonetheless given extra-strength Tylenol on September 3 and 7 and a pain shot on September 17, 1982, by prison medical staff. Finally, and most amazingly, inmate Penn returned to the prison hospital on September 30, 1982 complaining of pain in his left knee. Dr. Cooke entered into the sick call records that besides blatantly disregarding all medical instructions, inmate Penn had been observed *playing basketball.*

The plaintiff's total disregard to professional advice and instruction finally culminated in the need for a second surgical operation to his left knee to repair previous damage, and the damage done by the plaintiff as a result of his post-operative actions. Inmate Penn agreed to a second operation. Dr. Starks performed the second surgical operation on inmate Penn's left knee on December 7, 1982. By December 20, 1982, the plaintiff upon his own volition had again removed his post-operative cast. On December 22, 1982, the cast was partially reapplied by Dr. Cooke, but by January 4, 1983, inmate Penn had again removed the cast. Dr. Starks now refuses to treat the plaintiff.

Irrespective of the question whether a consulting surgeon, as opposed to a staff physician, is "acting under color of state law" for purposes of 42 U.S.C. § 1983, it is abundantly clear that plaintiff has stated no claim against this defendant.

█ Eighth Amendment medical claims must meet a simple test: was the defendant deliberately indifferent to the serious medical needs of the plaintiff such as to constitute an unnecessary and wanton infliction of pain? *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Where, as here, the inmate plaintiff has been seen and treated on several occasions by more than one physician as well as other medical personnel, nothing more than a case of medical malpractice, i.e., negligence, has been stated, and such does not give rise to a claim cognizable under § 1983. 429 U.S. at 107, 97 S.Ct. at 292. *See also, Merritt v. Faulkner,* 697 F.2d 761, 765 (7th Cir.1983); *Duncan v. Duckworth,* 644 F.2d 653, 654 (7th Cir. 1981); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980).

█ Even if it could be argued that plaintiff's claim is grounded on a sincere disagreement with the type and quality of treatment received, such disagreement between the inmate and his treating physicians does not constitute a constitutional deprivation. *See,* e.g., *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975); *Shields v. Kunkel,* 442 F.2d 409 (9th Cir.1971).

Under the uncontroverted facts of this case, the patent frivolity of plaintiff's claim renders it subject to summary disposition. Accordingly, defendant's motion for summary judgment is hereby GRANTED in his favor and against the plaintiff. CASE DISMISSED.