Robert Wayne MARTIN, Plaintiff,

v.

Jack R. DUCKWORTH, Superintendent, and Linley E. Pearson, Indiana Attorney General, Defendants.

No. S 83–353.

United States District Court,
N.D. Indiana,
South Bend Division.

March 29, 1984.

Robert Wayne Martin, pro se.

Joseph M. Kalady, Legal Asst., Michigan City, Ind., for plaintiff.

Linley E. Pearson, Atty. Gen. of Indiana, Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This action was filed pursuant to 42 U.S.C. § 1983 by an inmate at the Indiana State Prison in Michigan City, Indiana, against the Prison's Superintendent and the Indiana Attorney General. Jurisdiction over the claims presented is predicated on a federal civil rights question under 28 U.S.C. §§ 1331, 1343. This case was tried before this court sitting without a jury at the Indiana State Prison on January 3, 1984. Pursuant to F.R.Civ.P. 52(a), this decision by memorandum and order constitutes this court's findings of fact and conclusions of law.

### I.

The underlying facts in this case, as adduced at trial,[1] are not in dispute. On August 28, 1982, plaintiff drove away from a Prison work detail in a Prison motor vehicle and was gone for a period of just under one hour. Plaintiff contends that he had permission to do so, i.e., that he had

---

1. Plaintiff made no request of this court for appointed counsel under 28 U.S.C. § 1915(d). However, plaintiff did file a Motion for the Assistance of a Legal Assistant on November 28, 1983, asking that fellow inmate Joseph Kalady be permitted to act on his behalf at the trial as a lay advocate. The motion was granted the following day, and Joseph Kalady represented the plaintiff at trial.

Joseph M. Kalady has appeared before this court on numerous occasions in his capacity as a lay advocate, and has consistently demonstrated the highest degree of competence this court has yet seen from any inmate legal assistant. It is this court's understanding that Mr. Kalady holds a Master's degree in philosophy from DePaul University, and worked for two Chicago Loop law firms prior to his incarceration.

been ordered to go to the Prison's West Farm Rifle Range to mow the grass. Defendants, on the other hand, contend that plaintiff simply stole the motor vehicle and attempted to effect an escape.

Upon his recapture (or, from plaintiff's perspective, his unlawful arrest), plaintiff was charged in state court with the crimes of escape and theft of state property. Plaintiff entered into a plea negotiation whereby he agreed to plead guilty to the theft charge in exchange for the State's promise to drop the escape charge. This was done, and plaintiff was sentenced to an additional determinate term of two years' imprisonment on the theft conviction.

Although the escape charge was dropped, and plaintiff has been neither tried nor convicted thereon, information concerning plaintiffs' alleged escape remains in his individual Prison personnel file. This information takes the form of copies of the following documents, all referring to his alleged escape: an undated Indiana Parole Board form; a memo dated August 30, 1982, from Edward L. Cohn, the Prison's Assistant Superintendent for Operations, to "custody Supervisor"; a letter dated August 3, 1982, from Superintendent Duckworth (by Edward L. Cohn) to Cloid Shuler, Deputy Commissioner of Operations for the Indiana Department of Correction; and a Prison Action Committee Report dated July 15, 1983, wherein Superintendent Duckworth denied a grievance filed by the plaintiff in the following language: "The act of escape did occur and was related to the charge of theft for which inmate received 2 years[.] The [state] Court did not take action on the escape due to a plea negotiation[.] J R Duckworth".[2]

The gravamen of plaintiff's complaint is that the presence of the above documents in his personnel packet adversely affects the nature of his confinement at the Prison by precluding him from being considered for certain "benefits," specifically that of being housed in a particular "honor dormitory" unit at the Prison, I Cell House.[3] Plaintiff contends that this adverse effect constitutes (1) double jeopardy (?), and (2) the deprivation of a liberty interest without due process of law, because he is being punished for an escape without ever having been convicted thereof.

Of the witnesses called at trial, all but the plaintiff were Prison officials. These officials candidly admitted to the presence of "escape" documentation in plaintiff's Prison file; that plaintiff had not been convicted of escape by a Prison adjudicating board or state court; and that the "escape" documentation was the principal reason plaintiff had been denied I Cell House residency.

Because both sides are in agreement as to the essential underlying facts,[4] this court is confronted solely with a legal question: Whether plaintiff was unlawfully deprived of any constitutionally protected interest. For the reasons set forth below, this court concludes that plaintiff has stated no claim cognizable under 42 U.S.C. § 1983, and that judgment must be entered in favor of the defendants.

## II.

In any § 1983 action, a plaintiff must allege and prove two things: first, that he has been deprived of a federally protected interest; and second, that said deprivation occurred at the hands of those acting under color of state law. *Parratt v. Taylor*, 451

---

**2.** Assistant Superintendent Cohn signed on behalf of Superintendent Duckworth (his initials, "ELC", appear beneath what purports to be defendant Duckworth's signature). Evidence at trial disclosed that Mr. Cohn routinely acted on behalf of Mr. Duckworth in such matters and that such formed a normal part of Mr. Cohn's administrative duties.

**3.** There was some discussion in both the pleadings and at trial about denials of other "benefits", e.g., trustee status and work release. How-

ever, the evidence adduced at trial, including the uncontroverted testimony of defendant Duckworth, was that plaintiff had neither requested nor been denied trustee status or work release. Accordingly, the only "benefit" addressed herein will be that of I Cell House residency.

**4.** With the obvious caveat that defendants and plaintiff disagree as to whether there was, in fact, an escape attempt on plaintiff's part.

U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Since it cannot be seriously maintained that the defendants were not acting under color of state law here, this court must determine whether plaintiff has been deprived of any federally protected right.[5]

The facts as adduced at trial are that plaintiff has suffered no loss of good time credit and no reduction in time earning classification as a result of his alleged escape. Further, he has at all times relevant hereto remained in the Prison's general population, and was never subjected to disciplinary segregation because of his alleged escape.[6] Finally, and although Prison regulations allow for the imposition of disciplinary sanctions for escape, plaintiff never appeared before any Prison Conduct Adjustment Board and never received any punishment for his alleged escape. In short, the only "harm" suffered plaintiff was the denial of his request to be housed in I Cell House.

The line of cases from *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) to *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.1983), emphasize the degree of deference to be accorded prison officials in their day-to-day administrative actions involving those inmate interests which do not rise to the level of federal protection. The Supreme Court has expressly held that, absent some state-created expectation, inmates have no legitimate protected interest in not being accorded particular security classifications and being transferred between or within correctional facilities. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Olim v. Wakinekona,* — U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Inmates in Indiana correctional facilities have no state-created or -recognized, constitutionally protected right to be assigned any particular security classification. *Kincaid v. Duckworth,* 689 F.2d 702 (7th Cir.1982); *Love v. Duckworth,* 554 F.Supp. 1067 (N.D.Ind.1983).

Accordingly, and based on the above, it now the ORDER of this court that judgment be entered in favor of the defendants, and against the plaintiff.

---

**5.** Without meaning any disrespect to the plaintiff, nor intending to trivialize what he perceives to be a legitimate claim, this court must dismiss his double jeopardy argument out of hand as being wholly without merit.

The Double Jeopardy Clause of the Fifth Amendment consists of three separate guarantees which protect against the following:
(1) a second prosecution for the same offense after having once been acquitted thereon;
(2) a second prosecution for the same offense after having been convicted thereon; and,
(3) successive punishments for the same offense.
*Wilson v. Meyer,* 665 F.2d 118, 120 (7th Cir. 1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Plaintiff is not now, nor has he been, convicted of escape. He is under no threat of prosecution thereon. Finally, plaintiff, as an incarcerated, convicted felon, is under no threat of losing his "freedom" as a result of the documents pertaining to his alleged escape contained in his Prison personnel file.

**6.** During the pendency of the state court theft charges and the outcome of the investigation thereon, plaintiff was, *per* standard Prison procedure, held in administrative segregation. Administrative segregation is not disciplinary in nature, i.e., those held in administrative segregation receive more privileges than those placed in disciplinary segregation. As already noted, plaintiff was promptly returned to general population upon the resolution of his state court proceedings.