Edward L. RICHARDSON, Plaintiff,

v.

Chuck PENFOLD and Edward
Dyer, Defendants.

No. S 83-472.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 30, 1986.

Joseph M. Kalady, Legal Asst., Michigan City, Ind., Adam Bourgeiois, Marcia K. Johnson, Chicago, Ill., J. Moritz Grolimund, Elkhart, Ind., for plaintiff.

David L. Steiner, Michael B. Murphy, Deputy Attys. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The plaintiff, Edward L. Richardson, is an inmate at the Indiana State Prison and filed the complaint in this action purporting to allege claims under Title 42 U.S.C. § 1983 on October 12, 1983. The subject matter jurisdiction of this court is invoked under Title 28 U.S.C. §§ 1331 and 1343(3) and (4). The plaintiff has had and presently has the services of legal counsel in this case. The defendants filed a Motion for Summary Judgment on October 17, 1986 and the plaintiff filed a Memorandum in Response and an affidavit on December 3, 1986. Oral argument was heard on December 12, 1986. Such motion for summary judgment is now ripe for ruling. The deposition of the plaintiff was taken and has been published and considered.

Three charges are in the complaint. First, the plaintiff alleges that the defendants failed to protect him from sexual assaults by other inmates in January, 1983. The second allegation concerns access to the courts which must be examined in light of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The third claim is a very generalized and vague one that this plaintiff is receiving fewer rights and privileges than other inmates without due cause.

The focus of this memorandum is on the alleged failure of these two defendants to protect the plaintiff from sexual assaults while incarcerated at the Indiana State Prison in January 1983. The complaint appears to seek only money damages from each of the defendants under § 1983 and a jury trial has been requested and granted under what this court believes are the mandates of *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983).

### II.

█ The first question which must be considered is whether the damage claims are foreclosed as against Penfold and Dyer in their official capacities. The Eleventh Amendment of the Constitution of the United States provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In 1890 in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court of the United States gave an expansive reading to the Eleventh Amendment which prevails today despite the strong protestation of Justice Brennan. *See Papasan, et al. v. Allain,* —— U.S. ——, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Green, et al. v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); and *Atascadero State Hospital, et al. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). There can be no question that damage claims against the State of Indiana are foreclosed under current Eleventh Amendment doctrine. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This court has ruled that the Department of Correction, as an agency and instrumentality of the State of Indiana, has the benefit of Eleventh Amendment immunity. The Court of Appeals for the Seventh Circuit has ruled, speaking through the late Justice Stewart, that the Warden of the State Prison is immune from such damage claims in his official capacity. *See Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982). There is also language in other cases emanating from this circuit that would indicate that these state officials are immune from damage claims in their official capacities. *See Rascon v. Hardiman,* 803 F.2d 269 (7th Cir. 1986); *Coleman v. Frantz,* 754 F.2d 719 (7th Cir.1985); and *Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983).

█ Based on the foregoing, the damage claims as against these two defendants in their respective official capacities are foreclosed by the Eleventh Amendment.

### III.

Recently the Supreme Court of the United States took the opportunity to address Rule 56 of the Federal Rules of Civil Procedure. In two cases decided on the same day, the court has expanded the scope of the application of Rule 56. *See, Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards in which the record is to be analyzed within the stricture of Rule 56.

Based on the decision of the Court in *Celotex*, it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. *Celotex*, — U.S. —, 106 S.Ct. at 2554. The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Id.* 106 S.Ct. at 2553. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* Further, in *Anderson*, the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. *Anderson*, — U.S. —, 106 S.Ct. at 2510. In addition, the Court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* 106 S.Ct. at 2512–2513.

### IV.

There is a long line of authority in this court and elsewhere requiring personal involvement as an essential prerequisite to a claim against an individual defendant under § 1983. *See Monell v. the Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and a line of cases in this circuit beginning with *Ad-ams v. Pate*, 445 F.2d 105 (7th Cir.1971), running through an appeal from this court in *Wellman v. Faulkner*, 715 F.2d at 275, and most recently in *Rascon v. Hardiman*, *supra*.

The Supreme Court has espoused a measure of conduct in two cases which must be shown before a constitutional infringement protected by 42 U.S.C. § 1983 is implicated. Second, and more importantly, the Court emphasized that only those rights directly derived from the Constitution, its Bill of Rights, and its other Amendments will be protected by 42 U.S.C. § 1983. In *Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court reviewed the § 1983 complaint of an inmate who argued that his liberty interest of freedom from bodily injury "without due process of law" within the meaning of the Fourteenth Amendment had been abridged when the jail staff left a pillow case on the jail floor which the plaintiff slipped on resulting in physical injury. At 106 S.Ct. 664, the Court cited its prior holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), wherein it held that all that needs to be shown in a § 1983 suit is that a constitutional deprivation occurred and that there is no requirement of a showing of the defendant's "state of mind". The Court concluded that the intentional loss of a liberty, a right, property, or the sustaining of a personal injury which is a result of negligent action does not rise to a level which is protected by the Fourteenth Amendment:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law.

106 S.Ct. at 665. The Court, at 106 S.Ct. 666, made it clear that only those rights which are traditionally derived from an uncluttered and pristine reading of the Constitution, its Bill of Rights, and its other Amendments will trigger Fourteenth Amendment protection:

> Our Constitution deals with the large concerns of the governors and the gov-

erned, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1917.

The Court in *Daniels* concluded that the actions of the defendants in leaving a pillow case on the floor did not rise to the level of conduct which implicates the Due Process Clause of the Fourteenth Amendment:

> Where a government official's act causing injury to life, liberty or property is merely negligent "no procedure for compensation is constitutionally required." *Parratt*, 451 U.S. at 548 [101 S.Ct. at 1919] (POWELL, J., concurring in result) (footnote omitted).

106 S.Ct. at 666. The Court emphasized its narrow interpretation of those subject matters which can legitimately claim ancestry in the Constitution:

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interests. The enactment of tort claim statutes, for example, reflect the view that injuries caused by such negligence shall generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. (footnotes omitted).

106 S.Ct. Ct. at 666.

In *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), another prison case, the inmate plaintiff filed a § 1983 action against prison administrators alleging that they had abridged his right not to be subjected to cruel and unusual punishment as proscribed by the Eighth Amendment, and his right not to be deprived of personal security without due process of law as protected by the Fourteenth Amendment. Factually, the plaintiff asserted that he had sent a written message to a prison administrator informing the administrator that he had been physically threatened by a fellow inmate and that he feared assault from the inmate whose name was specified. Prison administrators basically ignored the message. The plaintiff was soon thereafter assaulted by the specified inmate by the use of a fork which resulted in wounds to plaintiff's face, neck, head, and body, and caused a broken nose. While citing its decision in *Daniels, supra*, the Court again held that the defendant's inattention to the written message did not rise beyond a level of conduct which could be described as negligent. The Court held that even though serious injury resulted from defendants' conduct, the plaintiff was not protected by the Due Process Clause of the Fourteenth Amendment. *Davidson*, 106 S.Ct. at 670.

The plaintiff in *Davidson* attempted to distinguish and isolate the substantive claim (not to be deprived of personal security) from the procedural claim by arguing that his claim was "purely procedural," thus circumventing the requirement that plaintiff must show conduct beyond negligence. The Court reaffirmed that such an argument must fail because the procedural aspect of the Fourteenth Amendment is only triggered if any underlying substantive right is at issue:

> In an effort to limit the potentially broad sweep of his claim, petitioner emphasizes that he "does not ask this Court to read the Constitution as an absolute guarantor of his liberty from assault by a fellow prisoner, even if that assault is caused by the negligence of his jailers." Brief for Petitioner at 17. Describing his claim as one of "procedural due process, pure and simple," Id., at 14, all he asks is that New Jersey provide him a remedy. But the Fourteenth Amendment does not

require a remedy when there has been no "deprivation" of a protected interest. *Davidson,* 106 S.Ct. at 670. The Court in *Davidson* concluded that the complaint failed because "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson,* 106 S.Ct. at 671.

At least one judge on our Court of Appeals has summarized: "Negligence is not itself actionable. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." *Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir.1986). *See also Bodine v. Elkhart County Election Board,* 788 F.2d 1270, 1272 (7th Cir.1986) and *Rascon v. Hardiman, et al., supra.*

### V.

It is now necessary to turn to the question of whether there are individual claims against the defendants, Penfold and Dyer, personally, that will survive scrutiny under Rule 56 of the Federal Rules of Civil Procedure as that rule has most recently been interpreted by the Supreme Court of the United States.

This involves an examination first of the law as it has evolved on that subject and then an examination of the factual record in this case in the light most favorable to the plaintiff. This court addressed the question of liability for a prison official for inter inmate violence in at least three published opinions. *See Burr v. Duckworth,* 547 F.Supp. 192 (N.D.Ind.1982), affirmed by unpublished order, 746 F.2d 1482 (7th Cir.1984); *Massey v. Smith,* 555 F.Supp. 743 (N.D.Ind.1983); and *Risner v. Duckworth,* 562 F.Supp. 378 (N.D.Ind.1983). The most recent relevant discussion of this subject by the Court of Appeals in this circuit is in *Walsh v. Brewer,* 733 F.2d 473 (7th Cir.1984) where Judge Bauer, speaking for the court at page 476, stated:

Prison officials who show "deliberate indifference" to violent inmate attacks deprive inmates of their eighth amendment rights. *Little v. Walker,* 552 F.2d 193 (7th Cir.1977), *cert. denied,* 435 U.S. 932,

98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). Although this guarantee generally is implicated only when an inmate is assaulted, risks to an inmate's safety alone may violate his rights when the threats are so constant that a virtual "reign of terror" exists. *See Murphy v. United States,* 653 F.2d 637 (D.C.Cir.1981); *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Withers v. Levine,* 615 F.2d 158 (4th Cir.1980), *cert. denied,* 449 U.S. 849, 101 S.CT. 136, 66 L.Ed.2d 59 (1980). Although Walsh does not rely specifically on these cases, he does claim that "Mellas and Martin had knowingly permitted an atmosphere of lawlessness and violence to prevail at Stateville." Appellant's br. at 19. The district court's order does not discuss whether the evidence showed that the inmates at Stateville were exposed to an unconstitutionally high risk of harm, and thus we vacate and remand the court's decision for further consideration of the evidence. To show that the Stateville procedures were unconstitutional, the record must indicate either that assaults occurred so frequently that they were "pervasive," *Murphy,* 653 F.2d at 644, or that Walsh belonged to an "identifiable group of prisoners" for whom "risk of ... assault [was] a serious problem of substantial dimensions," *Withers,* 615 F.2d at 161. Absent either of these showings, the district court should hold that Mellas and Martin did not violate Walsh's constitutional rights.

If the record shows that Stateville's procedures were unconstitutional, the court then should award Walsh appropriate damages. Walsh has not sought injunctive or declaratory relief. He also is not entitled to compensation for injuries from Lee's attack, because the district court found that the attack did not result from any defects in Stateville's inmate assignment procedures. The court should consider compensation for harm, if any, resulting from the constitutional violation, and appropriate compensation

for the constitutional violation itself. *See generally Lenard v. Argento,* 699 F.2d 874, 891 (7th Cir.1983), *cert. denied,* 464 U.S. 815 [104 S.Ct. 69, 78 L.Ed.2d 84] (1983).

■ The cases in this circuit clearly require a showing of deliberate indifference on the basis of either actual intent or recklessness. *See Little v. Walker,* 552 F.2d 193, 197 n. 8 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). In *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985), the Court of Appeals held that a defendant acts recklessly when that defendant disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position. Recklessness is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation where a high degree of danger is apparent. *See also Duckworth v. Franzen,* 780 F.2d 645 (7th Cir.1985). The factual situation in the Supreme Court's decision in *Davidson v. Cannon, supra,* is of particular relevance here since that case involved inter inmate assault and dealt with the responsibility of prison officials therefor. It appears that the alleged conduct of the officer in *Davidson v. Cannon* is considerably more egregious than that shown by the record in this case. *Davidson v. Cannon* is certainly authority for the dismissal of all claims based on negligence in this case and it is very difficult to find anything more than possible negligence as far as the defendant Penfold is concerned.

■ It is undisputed in the deposition of the plaintiff that he never met or communicated with Penfold in any way until after the rapes had occurred. This is confirmed by the affidavit of Penfold and indeed is confirmed by the subsequently filed affidavit of Alvin Staggers. Little more needs to be said about the defendant Penfold since under any theory he is entitled to a judgment as a matter of law and no claim is stated against him.

■ A considerably closer examination of the record is required as to the defendant Dyer. Richardson's deposition and the Dyer affidavit indicate that disagreement which appears to be somewhat compounded by the Alvin Staggers affidavit. It is a very close call under *Davidson* and under *Walsh v. Brewer, supra* as to whether there is enough inference of a reckless indifference as to Dyer to cause this Eighth Amendment claim to be tried before a jury. However, the plaintiff does testify that he started receiving sexual threats and reported this to Dyer around January 9 or 10, 1983. However, as in *Burr v. Duckworth, supra,* the plaintiff refused to tell Dyer who was making the threats. The conveyance of that information is, to this court, critical to the claim of the plaintiff. Furthermore, the Staggers affidavit is in no way enlightening on this narrow but critical point. The first alleged rape occurred on January 11, 1983, when the plaintiff claims that inmate Birch raped him. However, it is not disputed that Dyer at that time was not present on the unit, that the plaintiff did not tell any staff member that he had been raped on that day, and that the plaintiff did not yell or call for help. The plaintiff claims that he told Dyer that he had been a victim of a rape in a conversation *after* the January 11, 1986, on either January 12 or 13, 1986. Since *Dyer* says he does not recall that conversation on that point, the factual inference must favor the *plaintiff.* The plaintiff did not say who raped him and did not ask to go to the medical area at that time. Neither did he ask for protective custody but continued in his job as a porter. Dyer indicated that he could do nothing unless the plaintiff was willing to tell who raped him. And again, that is not disputed by the Staggers affidavit. It is at least of some interest that in the plaintiff's deposition it is admitted that Richardson did not tell Dyer that Staggers and Birch had previously participated in the alleged rape of January 11, 1983. Apparently, it is the affidavit of Staggers that is now being tendered for the purpose of creating an issue of fact in this case. An examination of the factual record in this case, including

the affidavits and deposition, indicate at its worst that the conduct of Officer Dyer is not as egregious as was the conduct of Officers Cannon and James in the *Davidson* case. Neither is there any inference or evidence of a so-called reign of terror that was referred to by the court in *Walsh v. Brewer, supra*[1]. Given the current status of the law and making a complete examination of the allegations and factual record in light of that law, this court concludes that no claim for a constitutional violation has been made out under the current reading of Rule 56 of the Federal Rules of Civil Procedure and that the defendant Dyer and defendant Penfold are entitled to a judgment as a matter of law.

### VI.

■ The remaining claims require little attention. Certainly *Bounds v. Smith, supra*, allows the inmates of the Indiana State Prison and any other comparable institution in this nation reasonable access to the United States District Courts. This court concludes from the record that plaintiff has had more than reasonable access to the courts. There is simply no factual predicate whatsoever in this record to hold either one of these defendants in any way responsible for the fact that the earlier version of the complaint became lost. The claim is certainly without merit and contains all of the indices of frivolousness.

The claim with regard to so-called unequal treatment is far too vague and general to require this court's attention. This court gave very detailed consideration to such a claim as to pretrial detainees at the Indiana State Prison which is reflected in the case of *Lock v. Jenkins*, 641 F.2d 488 (7th Cir.1981). It is revealing that the plaintiff's response filed by counsel on December 3, 1986, makes no argument with regard to the second and third issues

---

1. Counsel for the plaintiff requests this court to take note of its docket to determine that a "reign of terror" exists at the Indiana State Prison. In Appendix A attached hereto are a collection of published opinions that relate to Section 1983 claims at the Indiana State Prison. It has been the principal responsibility of this Judge to handle Section 1983 and 2254 cases emanating from the Indiana State Prison and the Westville Correctional Center since 1976. (This became shared with Judge Miller in January, 1986.) Some of those cases such as *Lock v. Jenkins*, 641 F.2d 488 (7th Cir.1981), and *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir.1983), involved complex and difficult questions of fact and law. Some cases such as *Childs v. Duckworth*, 705 F.2d 915 (7th Cir.1983), involved delicate First Amendment issues. Many required evidentiary hearings and trials conducted at the Indiana State Prison. Most required a large amount of judicial and staff time. Some, but not all of these cases were without merit and too many were totally frivolous.

In its presentation filed December 3, 1986, there is some reference to *Williamson v. Duckworth*, S82–379, and an agreed order involving violence prone inmates at the Indiana Reformatory. This court has taken the trouble to review that case. There can be no doubt that there are always monumental problems in a maximum security penal facility housing over 1600 male inmates including nearly 40 on death row. These kinds of problems do not not prove or infer a reign of terror and this court has never made such a finding as to the Indiana State Prison. The agreed order stated:

"Come now the parties by counsel and enter into this Agreed Order as to the outstanding issues in this matter as follows:

1. The medical issue is withdrawn by the plaintiff.

2. The custodial issues are resolved as follows:

The administrators at Indiana State Prison (I.S.P.) will continue to identify violence-proned inmates to segregate the violence-proned inmates from other inmates. The violence-proned inmates are to be segregated in disciplinary segregation units or transferred to Indiana Reformatory and assigned to G.C.H. Indiana Reformatory. The Department of Correction (D.O.C.) will be requesting funds for additional segregation space at Westville Correctional Center (W.C.C.) in the next biennium budget and will consider adding additional segregation space in its Departmental Master Plan.

The Department of Correction has developed a master roster for staffing patterns and will continue to review such master roster on an annual basis. During such review particular attention will be paid to staffing in traffic areas during periods of offender movement.

The parties by counsel agree to the foregoing and execute this Agreed Order.

It is ORDERED that this Agreed Order is to be entered as a matter of record in this case."

This Agreed Order was an effort to settle one of a multitude of civil law suits filed under 42 U.S.C. § 1983. It does *not* prove a reign of terror. It is proof of an effort to deal with practical and ongoing problems in a maximum security prison.

presented, but deals only with the assaultive issue. As the Court of Appeals has pointed out with reference to life in other prisons in this circuit, these prisons are not pleasant places to be and the kinds of conduct that are referred to in this case and in many other similar cases are certainly not to be condoned.[2] Prison officials have an emerging and ongoing responsibility to prevent sexually assaultive behavior between non-consenting inmates. The difficulty in fulfilling that responsibility is all too apparent in the many decisions on this subject from this court and elsewhere. One only has to examine the closely divided Fifth Circuit opinion in *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.1981), to realize how difficult it is to work out the areas of official responsibility in this regard. However, in this case there are key elements absent that prevent this plaintiff from making a claim against these defendants. Because of these missing elements, it is necessary to grant the defendants' Motion for Summary Judgment and order the Clerk to enter judgment against the plaintiff and for both of the remaining defendants, Penfold and Dyer. Each party will bear its own costs. IT IS SO ORDERED.

## APPENDIX A

*Worsley v. Lash*, 421 F.Supp. 556 (1976).

*Lock v. Jenkins*, 464 F.Supp. 541 (1978), *aff'd in part, rev'd in part* (1981) 641 F.2d 488 (1981).

*Owen v. Shuler*, 466 F.Supp. 5 (1977), *aff'd* 594 F.2d 867 (1979).

*Owen v. Heyne*, 473 F.Supp. 345 (1978), *aff'd* 605 F.2d 559 (1979), *cert. denied* 444 U.S. 1090, 100 S.Ct. 1054, 62 L.Ed.2d 778 (1980).

*Young v. Hunt*, 507 F.Supp. 785 (1981).

*Childs v. Duckworth*, 509 F.Supp. 1254 (1981), *aff'd* 705 F.2d 915 (1983).

*Hendrix v. Faulkner*, 525 F.Supp. 435 (1981), *aff'd in part, rev'd in part sub nom Wellman v. Faulkner*, 715 F.2d 269 (1983), *cert. denied* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 225 (1984).

*Burr v. Duckworth*, 547 F.Supp. 192 (1982), *aff'd* 746 F.2d 1482 (1984).

*McChristion v. Hood*, 551 F.Supp. 1001 (1982).

*Love v. Duckworth*, 554 F.Supp. 1067 (1983).

*Laster v. Duckworth*, 554 F.Supp. 1184 (1983).

*Emory v. Duckworth*, 555 F.Supp. 985 (1983).

*Lewis v. Faulkner*, 559 F.Supp. 1316 (1983).

*Risner v. Duckworth*, 562 F.Supp. 378 (1983).

*Higgason v. Duckworth*, 573 F.Supp. 669 (1983) (filed by the offender as a habeas corpus, but treated by both the State and the Court on a civil rights action basis as an alternative).

*Burris v. Kirkpatrick*, 573 F.Supp. 1084 (1983).

*Lockert v. Faulkner*, 574 F.Supp. 606 (1983).

*Penn v. Starks*, 575 F.Supp. 1240 (1983).

*Huddleston v. Duckworth*, 97 F.R.D. 512 (1983).

*Williamson v. State of Indiana, Department of Correction*, 577 F.Supp. 983 (1984) (4 cases dealt with by a single order, on belated motions for jury trial).

*Bennett v. Duckworth*, 578 F.Supp. 1380 (1984).

*Martin v. Duckworth*, 581 F.Supp. 1282 (1984).

*Sulie v. Duckworth*, 583 F.Supp. 995 (1984), *aff'd* 767 F.2d 924 (1925).

*Williams v. Duckworth*, 598 F.Supp. 9 (1983), *aff'd* 749 F.2d 34 (1984).

*Lippert v. Penfold*, 618 F.Supp. 510 (1984) (Work release offender challenging the CAB proceedings resulting in his transfer from the Summit Farm Work Release Center back to the Indiana State Prison).

---

2. *Walker v. Rowe*, 791 F.2d 507, 512 (7th Cir. 1986).

*Lock v. Jenkins,* 634 F.Supp. 615 (1986) (on attorney fees, only).

*Cases about the Prison but written by other Judges:*

*Aikens v. Lash,* 371 F.Supp. 482, (1974), *supplemented* 390 F.Supp. 663 (1975) *modified* 514 F.2d 55 (1975), *vacated* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), *aff'd* 534 F.2d 751, (1976), *on remand* 547 F.2d 372 (1976) (Judge Grant).

*McChristion v. Duckworth,* 610 F.Supp. 791 (1985) (Judge Lee).

*Williams v. Duckworth,* 617 F.Supp. 597 (1985) (Judge Lee).

*Esposito v. Leddy,* 618 F.Supp. 1362 (1985) (Judge Bua in Chicago, but concerning correspondence between an Illinois offender and one at Indiana State Prison.)

*Cases brought by offenders at the Prison but not directly concerning conditions of the Prison or actions there:*

*Grooms v. Snyder,* 474 F.Supp. 380 (1979) (on issue of attorney fees under 42 U.S.C. § 1988 to an offender rendering legal assistance to another offender in a trial against the Elkhart County Sheriff's Department and State Police. Answer: No).

*Fair v. Givan,* 509 F.Supp. 1086 (1981) (against Chief Justice of Indiana and Attorney General, filed by Prison inmate, and concerning lay representation by another offender, *i.e.,* by Richard Lee Owen II, in state court post-conviction case).

*Williams v. King,* 554 F.Supp. 421 (1983) (Filed by Prison inmate but against his various public defenders).

*Thurman v. Rose,* 575 F.Supp. 1488 (1983) (property confiscation case by Prison inmate against sheriff and prosecuting attorney).

*Hendrix v. Indiana State Public Defender System,* 581 F.Supp. 31 (1984) (Prison inmates filed against Public Defender of Indiana, concerning representation in state post-conviction cases).